Dale CARTER, for himself, and by his father, Harvey T. Carter, and mother, Jo Ann Carter, his legal guardians, Plaintiffs,

v.

Luther HODGES, Jr., Bill Moran, Babe Cialone, Neil Crow, Ted Skokos, Blanche Tinder, and E. J. Embry, in their capacity as members of the Board of Education of the Fort Smith Arkansas School District, Chris Corbin, in his capacity as Superintendent of Schools of the Fort Smith Arkansas School District, E. R. Farnsworth in his capacity as Principal of Fort Smith Northside High School of Fort Smith, Arkansas and Clifton Grace in his capacity as Dean of Boys at Fort Smith Northside High School, Fort Smith, Arkansas, Defendants.

Civ. No. FS–70–C–72.

United States District Court,
W. D. Arkansas,
Fort Smith Division.

Sept. 22, 1970.

Youngdahl, Sizemore, Brewer, Forster & Uhlig, by John P. Sizemore, Little Rock, Ark., for plaintiffs.

Pearce, Robinson, McCord & Maurras, Fort Smith, Ark., for defendants.

## MEMORANDUM OPINION

PAUL X. WILLIAMS, District Judge.

In this action, Dale Carter, a white 20 year old male (appearing by his parents), seeks declaratory and injunctive relief against the Fort Smith School Board and certain school officials relating to hair style of male students in Northside High School. He contends that his rights under the First and Fourteenth Amendments to the United States Constitution are violated; and jurisdiction of this Court is invoked under 28 U.S.C. 1343 (3), (4) and 42 U.S.C. 1981 and 1983.

Although 20 years of age at this time, Mr. Carter was in the 10th grade during the 1969–70 school year. His work was not satisfactory for the year and it was recommended that he attend summer school. He did not see fit to do so. He played bass in a rock band named the "Frogs" and his musical activity led him to take an apartment away from his

parental home. He cultivated a long hair style as did the other members of the band. However, he returned to his home prior to the commencement of the present school year.

On Wednesday, August 26, 1970, the first day of school at Northside High School, Carter appeared and picked up his schedule card. When he attended study hall he was directed to report to the Dean of Men. He did so and Mr. Clifton Grace, the Dean of Men, told him that he was suspended from school for violation of the school Dress Code because of his long hair and hair style.

Mr. Carter's hair hangs over his collar in the back and over his ears; and was, and is, in deliberate violation of the school Dress Code.

Mr. Carter physically assaulted the Dean of Men and forcibly took the schedule card into his own possession.

After consultation with the High School Principal, the Dean of Men informed Carter that he was also expelled from Northside for a semester because of the assault.

The present action was commenced by the plaintiff and was heard before the Court on September 9th as to temporary relief.

Evidence was introduced by plaintiffs revealing the language of the "Dress Code" at Northside, which the Court finds to be as follows:

"Student Dress Code April 27, 1970, by the principals and deans of Northside and Southside High Schools.

*Preamble*

In order to establish high standards for our school, we must maintain neatness, cleanliness, and decency in the dress of all students. In view of this, students should follow every portion of this adopted dress code. The discretion of the deans will be supreme in deciding cases where a question is involved.

Pupils will at all times dress and be groomed so as to present a respectable appearance. Hair of extreme length or bizarre style will be considered undesirable, this to be regulated by school officials. Facial hair will not be considered appropriate. Any hair below the ear lobe will be considered as facial hair.

A. Exceptions for Girls:
   1. Strapless dresses, slacks, shorts, and bare midriffs will not be tolerated in the classroom.
   2. Culottes and pant-dresses will be permitted, but like skirts and dresses the length must not be shorter than mid-thigh.

B. Exceptions for Boys:
   1. Cut-offs, shorts, and sleeveless shirts will not be tolerated in the classroom.
   2. Shirt tails must be worn tucked inside the trousers unless they are designed to be worn on the outside.
   3. Socks are mandatory for health reasons.
   4. Tennis shoes and appropriate commercially printed T-shirts and jerseys will be permitted in the classrooms but all other athletic apparel is restricted to physical education activities."

Defendants introduced the testimony of school officials and teachers showing the history of the present "Dress Code", the factors that brought it about, what was considered, who took part in its formation, who authorized its promulgation and how it was enforced. Each witness testified that in his opinion the present "Dress Code" was reasonable and that the matters regulated had an effective relationship to the educational process at Northside High School. The classroom teachers had extensive experience as such, and each testified that violation of the Dress Code in hair length uniformly created a problem in discipline, and that the teacher had to sacrifice a portion of instruction time to regain the attention of the other students, whose attention was diverted by the action of the student in violating the Dress Code. Emphasis

was given to the problem of the age groups concerned and the customs of the community in which the school is located.

At the conclusion of the evidence, and after having heard the argument of counsel, the Court announced that the prayer for temporary relief was denied; that the Court found Carter was properly expelled for insubordination for assaulting the Dean of Men, and that the "Dress Code" was reasonable as applied to Northside High School in Fort Smith, Arkansas, and the school officials were acting within their authority in enforcing it as to Carter.

■ There is no United States Constitutional requirement that any State of the Union maintain a public school system and there is no United States public school system.

The public school system of Arkansas is made possible by the Arkansas Constitution which provides:

Article 14, § 1.

*"Free School System.*—Intelligence and virtue being the safeguards of liberty and the bulwark of a free and good government, the State shall ever maintain a general, suitable and efficient system of free schools whereby all persons in the State between the ages of six and twenty-one years may receive gratuitous instruction."

Arkansas has a compulsory school law. It is as follows:

Ark.Stats. (Repl.1960) 80–1502.

*"Attendance required of Children aged seven to fifteen.*—Every parent, guardian, or other person residing within the State of Arkansas and having in custody or charge any child or children between the ages of seven [7] and fifteen [15], (both inclusive) shall send such child or children to a public, private, or parochial school under such penalty for non-compliance with this section as hereinafter provided."

Arkansas also has two statutes concerning the age of students permitted to attend.

Ark.Stats. (Repl.1960) 80–1501.

*"Age of students permitted to attend schools.*—The public schools of any school district shall be open and free to all persons between the ages of six [6] and twenty-one [21] years, residing in that district, and the directors of any district may permit older or younger persons to attend the schools under such regulations as the State Board of Education may prescribe."

Ark.Stats. (Supp.1969) 80–1654.

"Minimum age of child admitted to kindergarten—Maximum age of person admitted to public school.— Domiciliary residents within a local school district who have not reached 21 years of age but who shall have attained five (5) years of age on or before October 1 of the year in which they are enrolled in an approved kindergarten program, and children who shall have attained six (6) years of age on or before October 1 in the year in which they are enrolled in the first grade, shall be enrolled in the district's public schools. Domiciliary residents who have attained the age of 21 years may enroll in the district's adult education programs; but, no person over the age of 21 years shall be permited to enroll in the district's public school from kindergarten through grade 12, except in districts where no courses are offered for which adults can obtain high school credits, and except as provided in Section 12 [§ 80–1655] hereof."

Arkansas has a statute concerning regulations:

Ark.Stats. (Supp.1969) 80–1656.

"Rules and regulations for orderly operation of schools.—Nothing in this Act [§§ 80–1644—80–1656] shall be construed to limit a local school district's power to adopt reasonable rules, regulations and policies, not inconsistent with the purposes of this Act, to insure continued orderly operation of schools, including adult education and area vocational-technical high

schools, and such powers are deemed to include the right of expulsion for student participation in any activity which tends, in the opinion of the Board, to disrupt, obstruct or interfere with orderly education processes."

Mr. Carter is 20 years of age. He is not required by law to attend school. However, by virtue of the Arkansas statutes, he has a right to attend subject to the reasonable rules and regulations of the Arkansas public school where he attends.

■ The Courts are agreed that schools authorities have broad discretion to enact and enforce student regulations so as to insure proper and efficient operation of the school.

■ The question presented in this case is whether or not the "Dress Code" at Northside High School is a reasonable rule that has an effective relationship to the educational process with which the school is concerned.

There is no question but that Mr. Carter has the right to wear his hair long or short, dyed any color, or styled any way, as he goes about the ordinary affairs of his life, and this Court is not concerned with whether it is stylish, pretty, ugly, attractive, repulsive, noticeable or ordinary when he wears it anywhere except in Northside High School at Fort Smith, Arkansas at the present school term, but when he wears it at Northside, it is a different matter because there he is attending an Arkansas public school that has a "Dress Code" which he is deliberately violating.

■ The burden is on the school and its officials to show that the rule is reasonable and has an effective relationship to the educational process.

The Court finds that the proof in this case is overwhelmingly in favor of the school.

There have been many "longhair" cases recently. The United States District Court for Eastern District of Arkansas decided Corley v. Daunhauer, 312 F. Supp. 811 (E.D.Ark.1970) involving long hair of a band member in which Judge Henley reviewed the law concerning long hair in school cases and cited many cases from all over the United States.

The necessity for such regulations is well expressed by him in the following language:

"Reasonable restrictions on students in the fields of conduct, dress, and appearance are desirable if the schools are to operate effectively and efficiently. That is necessarily so because learning for many people is a discipline rather than a pleasure, and if it is to be practiced successfully, the practice must be carried out in dignified and orderly surroundings. Public school students, particularly those at the elementary and junior high school levels, are still immature, some of them are children of tender years. They are excitable and prone to be distracted from their tasks. Whatever may be thought about conformity in general, it seems clear that reasonable conformity to established norms of dress and appearance contributes to orderly administration of classrooms, and that uncontrolled individuality of appearance tends to disrupt it. That has been the uniform experience of public school teachers and administrators for years, and that is why many of them have an almost reflexive tendency to move against personal oddities or eccentricities in the dress or appearance of individual students."

Not all cases decided reach the same result, but the views of this Court are in accord with those expressed by Judge Henley, as above cited, and by the 5th Cir. in Ferrell v. Dallas Independent School District, 392 F.2d 697 (1968). In the latter case, a suit was filed against the school district for injunctive relief following its refusal to enroll male students who failed to comply with school regulations banning long hair. The Circuit Court of Appeals held that the regulations as promulgated by the principal were not violative of federal constitutional rights or civil rights statutes. This case is almost identical with the

case at bar in that practically all of the same issues were raised. The plaintiffs involved had "Beatle" type haircuts and they were members of a musical group or combo known as "Sounds Unlimited." The "Beatle" type haircut was described by the mother of one of the plaintiffs as hair over his ears, but one can see the lobes of his ears; it is not over his collar but it is over his forehead and down to his eye brows. The plaintiffs contended that their hair style conformed to the standards of custom and usage within the field of entertainment and was a necessary element of audience attraction and performance. Plaintiff Carter made the same contention in the case at bar. In disposing of this contention the Court said:

"We recognize that appellants are professional musicians performing as a musical combo. Their right to follow this chosen business or occupation free from unreasonable governmental interference comes within the liberty and property concepts of the Fifth Amendment. Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). The action taken by the school authorities does not, in our view, interfere with appellants' right to continue in their chosen occupation of professional rock and roll musicians. It is common knowledge that many performers are required to use special attire and makeup, including wigs or hairpieces, for their public appearances. At this stage in appellants' lives school may be more important than their commercial activities. In any event, we do not feel that their business activity is eliminated, as a practical matter because of the school's rules and regulations."

In reaching its conclusion as to the constitutional issues involved the Court said:

"The decided cases clearly demonstrate that each case must be decided in its own particular setting and factual background and within the context of the entire record before the court in determining whether the rule or the action about which complaint is made is arbitrary, capricious, unreasonable or discriminatory.

"The Constitution does not establish an absolute right to free expression of ideas, though some might disagree. The constitutional right to free exercise of speech, press, assembly, and religion may be infringed by the state if there are compelling reasons to do so."

The same conclusions were reached in a recent decision of the Sixth Circuit Court of Appeals in the case of Jackson v. Dorrier, 424 F.2d 213 (M.D. of Tenn.1970) where an action was brought by male pupils and their parents against the high school principal and board of education to enjoin enforcement of the school board's regulations which prohibited male students from wearing long hair. The Court held that the pupils' constitutional right to due process of law was not violated by the enforcing of the school board's regulation. In that case as in *Ferrell, supra,* the plaintiffs contended that their course of personal grooming was for the purpose of enhancing their popularity as a musical group in which each performed. The Court held that the growth of hair for purely commercial purposes, such as for performance in a musical group, was not protected by the First Amendment guarantee of Freedom of speech.

In regard to the students' contention that they were deprived of equal protection of law in violation of the Fourteenth Amendment the Court said:

"The record is absolutely devoid of any proof that the regulation's application in this case was the result of selective enforcement of the regulation against these students, so as to sustain the allegation that they have been denied the equal protection of the law.

"As previously stated, substantial evidence supports the finding of the District Judge that the regulation has a real and reasonable connection with the successful operation of the edu-

cational system and with the maintenance of school discipline."  .

There are a number of opinions from United States District Courts in accord with the *Ferrell* and *Jackson* Circuit Court of Appeals cases which uphold regulations promulgated by the local school authorities in connection with the grooming habits of students.

In Crews v. Clones, 303 F.Supp. 1370 (S.D.Ind.1969) the plaintiff student sought injunctive relief requiring school authorities to admit him to public high school without his first complying with the school's requirement of satisfactory hair length and style under announced rules and regulations. The District Court held that the student's appearance, being a departure from the norm, caused disturbance and disruption of the education process and that the regulation was necessary in the maintenance of an efficient and orderly school system.

At page 1375 of the opinion the Court said:

"To require the school authorities to attempt to carry out the educational function in an atmosphere of turmoil and disruption would be ludicrous; hence, conduct which has the effect of bringing about disruption, whether intending that effect or not, may constitutionally be proscribed within reason. Ferrell v. Dallas Independent School District, 261 F.Supp. 545 (N. D.Texas 1966), aff'd 392 F.2d 697 (5th Cir. 1968) cert. den. 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968). The Court considers the *Ferrell* case to be very well reasoned and highly persuasive."

The Court stated that even if the choice of hair styles in public schools were included within the rights of privacy for the student, the state by showing classroom disruption resulting from student conduct of wearing long hair, had met the substantial burden of justification required for limiting that right.

Also apropos to the case at hand is the statement of the Court in Wood v. Alamo Heights Independent School District, 308 F.Supp. 551 (W.D.Texas 1970):

"More than ample testimony was presented to the effect that extreme. hair styles may, and probably would, be a disrupting influence on a student body which does not wear them. Certainly school officials are not forbidden to take steps necessary to prevent that which they have good reason to believe would otherwise result in a breakdown of school discipline."

The case of Schwartz v. Galveston Independent School District, 309 F.Supp. 1034 (S.D.Tex.1970) was filed for injunctive relief by a student against school officials to enjoin the enforcement of a school regulation relating to the length of students' hair. The Court held that the state remedies available to the student were not superseded by the statute conferring jurisdiction on federal courts in civil rights cases but the statute was enacted to provide remedy only where one either did not exist or for some reason the existing remedy was unenforced or otherwise insufficient. No such showing has been made by plaintiff herein.

The district judge pointed out that the administration of the school system should repose in the hands of the school officials and a "federal court should not intervene in an activity as important to the State as this, except in very exceptional circumstances." (Page 1046).

In the case of Farrell v. Smith, 310 F.Supp. 732 (Me.1970) the District Court held that the school's grooming code restricting beard, sideburns and long hair did not deny students any substantial right or protection guaranteed by due process clause of the Fourteenth Amendment, where justification of the regulation was that neat appearance and good grooming enhanced the image of the school and students among prospective employers, and thereby furthers the

employment opportunities of the student upon graduation.

■ The Court in that case recognized, as we do in the case at bar, that the right to grow a beard or to wear one's hair at any length is an aspect of personal liberty protected by the due process clause of the United States Constitution, Fourteenth Amendment. However, the Farrell v. Smith case also recognizes that school authorities are entitled to make and enforce reasonable regulations for maintaining effective school systems and that the Courts should refrain from interference with the functions of the school authorities unless their action is so arbitrary and unjustified as to constitute a significant encroachment upon personal liberties. We find no such encroachment in the case at bar.

One of the main cases relied upon by the student plaintiff is that of Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). This is not a case such as *Tinker* which involves an activity protected by the Freedom of Speech Provision of the First Amendment. The court held that "expression" as evidenced by armbands worn in school was constitutionally protected. However, the court there pointed out that it was not dealing with matters such as dress and hair style, as we have involved here.

In other cases relied upon by plaintiff the court found that the school authorities failed to make a reasonable showing of any justification for the regulations and they were accordingly held invalid. See Calbillo v. San Jacinto Junior College, 305 F.Supp. 857 (S.D.Tex. 1969); Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969) cert. denied 90 S.Ct. 1836 (1970); Richards v. Thurston, 304 F.Supp. 449 (D.Mass.1969) aff'd 424 F.2d 1281 (1st Cir. 1970). Thus, these cases are inapposite because we have found that the rule in question is reasonably related to the School System's maintenance of an effective educational process.

Judgment will be entered denying the request for a temporary injunction.

Since this order involves a question of law as to which there is substantial ground for difference of opinion and the plaintiffs indicate a desire to appeal, the order of this Court will contain the language described in 28 U.S.C. 1292(b) concerning appeal from an interlocutory order.