243 So.2d 204 (1971)
John W. CONYERS, a Minor, by His Mother and Next Friend, Janet M. Conyers, Appellant,
v.
Robert GLENN, As Principal of Clearwater High School, et al., Appellees.
No. 69-635.
District Court of Appeal of Florida, Second District.
January 20, 1971.
Michael O. Plunkett, Clearwater, for appellant.
Edward A. Turville, St. Petersburg, for appellees.
MANN, Judge.
Conyers had parental consent to wear his hair long, but was suspended from Clearwater High School without a hearing for failure to cut it. He sought a temporary injunction and a hearing before *205 the School Board on his contention that the regulation violated his constitutional rights.
The trial judge granted a temporary injunction, permitting Conyers to remain in school pending decision of his case. At a later hearing the trial judge announced that he would hear argument, but had prepared a lengthy order in which he found that Conyers was not entitled to due process, reasoning that the School Board was no more obligated to grant a hearing than are a child's parents. The complaint was dismissed.
One can understand how a trial judge, after researching the matter briefly, might be led to this conclusion. If he began with American Jurisprudence he would have read the following in 47 Am.Jur., Schools § 171:
"Clothes or Personal Appearance of Pupils.  In accord with the general principle that school authorities may make reasonable rules and regulations governing the conduct of pupils under their control, school authorities may prescribe the kind of dress to be worn by students or make reasonable regulations as to their personal appearance. Thus, so long as students are under the control of school authorities they may be required to wear a designated uniform or may be forbidden to use face powder or cosmetics or to wear transparent hosiery, low-necked dresses, or any style of clothing tending toward immodesty in dress."
Referring to the annotations cited, he would have learned that in Jones v. Day, 1921, 127 Miss. 136, 89 So. 906, 18 A.L.R. 645, the Supreme Court of Mississippi upheld a rule of the trustees of the Wilkinson County Agricultural High School requiring students to wear khaki uniforms. In 1923 the Supreme Court of Arkansas upheld the suspension of a girl for failure to remove powder she had worn for cosmetic purposes. Pugsley v. Sellmeyer, 158 Ark. 247, 250 S.W. 538, 30 A.L.R. 1212. A glimmer of dissent as to reasonableness of such regulations appears: Mr. Justice Hart said, "Miss Pearl Pugsley was eighteen years old on the 15th of August, 1922. I think that a rule forbidding a girl pupil of her age from putting talcum powder on her face is so far unreasonable and beyond the exercise of discretion that the court should say that the board of directors acted without authority in making and enforcing it. `Useless laws diminish the authority of necessary ones.' The tone of the majority opinion exemplifies the wisdom of this old proverb."
In 1965 the Supreme Judicial Court of Massachusetts unanimously upheld the power of the school authorities to deny admission to a long-haired student. Leonard v. School Committee of Attleboro, 1965, 349 Mass. 704, 212 N.E.2d 468, 14 A.L.R. 3d 1192. In the annotation which follows at page 1201, the legal scholar following this method of research would read of Tinker v. Des Moines Independent Community School District, 1966, 258 F. Supp. 971, in which the federal district court upheld the right of a school board to forbid the wearing of black armbands protesting our involvement in Vietnam.
But he would not learn of Tinker v. Des Moines Independent School District, 1969, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731, which reversed that decision and makes it perfectly clear that students are persons within the meaning of the Fourteenth Amendment and entitled to due process.
We follow Tinker and hold that this complaint was at least prematurely dismissed. Fla. Const. Decl. of Rights § 9, F.S.A., U.S.Const. Amend. XIV.
But what is due process? This is a larger and more complex question.
The order appealed from is grounded on the theory that parental authority has been transferred by the will of the majority to the board, and that the board has authority to prescribe the students' dress. The corollary of this proposition *206 is that if these long-haired young, grown to legal age, sufficiently persuade their fellow citizens to elect, by a bare majority, a bare majority of a school board, then that governmental body shall have the authority, by vote of its new majority, to suspend the student who cuts his hair during the term.
We cannot uphold the regulation for violation of which Conyers was suspended without according the same right of governance to future school boards. We would surmise that many who are not offended in the slightest by the imposition of the collective will on the long-haired boy of today would be early advocates of the short-haired individual's right to be different in a long-haired society. It is principle, not fashion, to which judges must repair in determining the extent to which government may invade the rights of the individual. Griswold v. Connecticut, 1965, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510. The opinions in Griswold reveal the difficulty our Justices have in ascribing to some specific constitutional inhibition their view that the state has overstepped the limits of its power. But the one clear consequence of Griswold is that some showing of overriding public necessity is a necessary predicate to state action interfering with the freedom of the individual. Cf. State v. Eitel, Fla. 1969, 227 So.2d 489. Conyers has never had a hearing on the reasonableness of this regulation and has been denied public education  a valuable right  for failure to comply with it. It is not as if he had asked and was refused permission to absent himself momentarily from the classroom. The failure to comply is punished by summary suspension of his education, and on the meager record before us there is no justification for this. We can understand how, after reading American Jurisprudence and cases reported in A.L.R., the trial judge might think himself on sound ground when he states:
"I cannot and do not question the authority of the people of this state, speaking through their constitution and their legislature, to have entrusted to their duly elected and appointed school officials responsibility and authority respecting many matters concerning their children which a few years past would have been considered the exclusive prerogative and duty of the parents. Among such matters which have been entrusted to the school authorities are those of dress and appearance and conduct during school hours or on school property. I firmly believe the legislature could require that all persons over six and under sixteen attend public school six days per week and wear a uniform specified by the legislature: by the same authority the legislature has authorized the public school authorities to adopt reasonable rules and regulations respecting appearance, conduct and attire. So long as the regulations adopted are reasonable, so long as they do not exceed the authority constitutionally delegated by the legislature, they will not be abrogated by this court."
But the trouble is that the school board and the parent are in disagreement: one says he may not and the other says he may wear his hair long. If the school board said simply that Conyers could not scuff the floor with cleats on his shoes it would have unquestioned authority to do so and would not conflict with the parent's authority to let the child tap dance on the dining room table if he wanted to.[1] Both the board and the parent cannot prevail with respect to the length of the boy's hair. Appellees' argument that the Marines cut the hair of recruits overlooks the facts. The Marine does not go home every afternoon, and the high school is not a Marine barracks. The question *207 here is whether the parent or the board is to control with respect to a matter as to which both cannot prevail. Unless the board can show some overriding necessity, this part of the child's nurture rests with the parent.
The trial judge asks: "Can it be questioned that our citizens expect and demand that our public schools teach manners and morals and that these manners and morals be taught consistent with the prevailing thought of the majority? Whatever we may think about it, however we may deplore it, a fact of existence in this country and this state today is that a great proportion of our parents have abdicated their parental duties and authorities except in a most general way and insist these are the responsibilities of the public school system." This statement is overbroad. The family is not obsolete in American life. Conyers has parental consent to wear his hair long. If the Pinellas County School Board wishes to teach Conyers what the sentiments of the American majority are it may do so. But it cannot deny him the right to an education in the absence of a showing that his conduct as an individual infringes on the rights of other students to an education. This it failed to do. The question of hair length is one of fashion,[2] not morality. Throughout history, fashion has changed, and to suggest a moral question here is to malign the memory of our leaders whose portraits are on our currency, of Minute Men who took up muskets to win the right of the individual to make his own decisions free of unwarranted governmental interference. A clear majority of the Chief Justices of the United States would be ineligible by the Pinellas Board's standards to matriculate at Clearwater High School.[3]
The cases in which suspension of students for wearing long hair has been upheld fall either into the category of those upholding school board authority either prior to or without acknowledging the change in constitutional standards wrought by such cases as Tinker and In re Gault, 1967, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, on the one hand, or a category of cases in which the conduct of the long-haired individual actually threatened or caused disruption. Ferrell v. Dallas Independent School District, 5th Cir.1968, 392 F.2d 697, to which a passing approving reference in Tinker is directed, is the major authority in this group[4] In Breen v. Kahl, 7th Cir.1969, 419 F.2d 1034, the regulation was held invalid and there was no evidence of actual disruption to support the suspension. The Supreme Court has denied certiorari in each of these cases.[5] Some opinions upholding suspension on records which support findings of disruption show an inadequate differentiation between the question of validity of the regulation and that of the individual student's conduct. Jackson v. Dorrier, 6th Cir.1970, 424 F.2d 213, is an example. Many other recent cases illustrate the confused state of the law on this matter.[6]
*208 While the school authorities may have ample cause to suspend a pupil who uses long hair  or well developed muscles, for that matter  in a disruptive way, there is nothing in the record at this stage to justify this regulation.
The distinction drawn by the Fifth Circuit between Burnside v. Byars, 1966, 363 F.2d 744, and Blackwell v. Issaquena County Board of Education, 1966, 363 F.2d 749, is instructive. These cases were heard by the same panel and involved the wearing by students of "freedom buttons." In Burnside a school regulation forbidding the wearing of freedom buttons was stricken. The principal had said that "the buttons `didn't have any bearing on their education,' `would cause commotion,' and would be disturbing [to] the school program by taking up time trying to get order, * * *" 363 F.2d at 746-747. The court recognized the right to make reasonable regulations, but said that "school officials cannot ignore expressions of feelings with which they do not wish to contend." Id. at 749.
In Blackwell, on the other hand, the students thrust their opinions on others in a disruptive way, which "created a state of confusion, disrupted class instruction, and resulted in a general breakdown of orderly discipline, causing the principal to assemble the students in the cafeteria and inform them that they were forbidden to wear the buttons at school." 363 F.2d at 751. The action of the principal was upheld.
We do not suggest that the wearing of exaggerated hair styles or other expression of individuality cannot be disruptive. Perhaps it can, and if it becomes so or clearly threatens to become so the disruption may be dealt with. But presumptively the regulation of individual style and taste is a matter for the individual.
Here the suspension is based on a violation of a regulation. Conyers admits the violation but denies the validity of the regulation. Under such circumstances an action for injunction is appropriate.[7] This situation is to be contrasted with that in which the student seeks an administrative hearing on the question whether there has *209 been a violation. In such a case the student is entitled to due process before the School Board. Whether suspension precedes hearing depends upon the possible necessity of removing the student from the school to preserve or restore order. For example, a physical assault may be dealt with by summary suspension pending hearing.[8]
Educators may be well on the way toward an understanding of the requirements of due process in student discipline cases. A voluminous literature has followed such cases as Dixon v. Alabama State Board of Education, 5th Cir.1961, 294 F.2d 150, which, as Professor Wright points out in his Holmes lecture at Vanderbilt,[9] treats public education as too valuable a right to warrant expulsion without notice and hearing.
Robert L. Ackerly, chief counsel for the National Association of Secondary School Principals, has prepared an informative booklet entitled "The Reasonable Exercise of Authority" in which he states:
"The courts have clearly warned that freedom of speech or expression is essential to the preservation of democracy and that this right can be exercised in ways other than talking or writing. From this generalization, it follows that there should be no restriction on a student's hair style or his manner of dressing unless these present a `clear and present' danger to the student's health and safety, cause an interference with work, or create classroom or school disorder."

In Florida, a 1969 conference jointly sponsored by the University of Florida College of Education and the State Department of Education has culminated in a useful little booklet entitled "Constitutional Rights of Students," edited by Alexander and Campbell, which includes Professor Levinson's useful chapter on Regulating Student Conduct and Professor Knowles' on The Tactics and Politics of Staying Out of Court.[10]
Judges are involved more than they ought to be in the superintendence of public education. We need not be. A scrupulous regard on the part of school authorities for the requirements of our Constitutions, and a little more rendition unto Ceasar on the part of students who are disturbed by school regulations would make life easier for all concerned. We doubt that any free society can ultimately endure either a general disposition to take every grievance to court or a disposition on the part of those in authority to require a court order as a condition precedent to the recognition of the individual's rights. It is one of the most difficult tasks of a citizen in a free society to differentiate those matters in which the state may require compliance with majority will and those in which it may not. The tendency to include in the former category those matters in which we agree with the majority and in the latter, those in which we do not, is provocative of tension. It is obvious that tolerance is necessary on all sides in order to preserve public order. We are not personally sympathetic with this sort of litigation because we know how tenuously the rights of the people depend on accessibility of the courts. The invocation of the judicial power in cases which could be resolved by a little reflection on the school board's part and a haircut on Conyers' seems unnecessarily to delay decision of more important matters. Freedom is a perishable commodity to which responsibility must be added as a preservative.
*210 Reversed and remanded with directions to reinstate the temporary injunction and for further proceedings consistent with this opinion.
LILES, Acting C.J., and McNULTY, J., concur.
NOTES
[1] The regulation of the Pinellas County School Board, as provided in its "Policies and Procedures," page 49, states: "That boys be clean-shaven and wear their hair styles in conventional manner; that it clears the eyebrows, the ears and tapered to the collar. Sideburns should be straight and no longer than the bottom of the ear."
[2] See 10 Encyclopaedia Britannica, Hairdressing (1970 ed.).
[3] See Equal Justice Under Law: The Supreme Court in American Life, 1965.
[4] Ferrell v. Dallas Independent School District, 5th Cir.1968, 392 F.2d 697, cert. den. 1968, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125; Blackwell v. Issaquena County Board of Education, 5th Cir.1966, 363 F.2d 749. Cf. Burnside v. Byars, 5th Cir.1966, 363 F.2d 744.
[5] Ferrell, see n. 4. Breen v. Kahl, 7th Cir.1969, 419 F.2d 1034, cert. den. 1970, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268.
[6] Recent decisions upholding school regulations include: Jackson v. Dorrier, 6th Cir.1970, 424 F.2d 213; Davis v. Firment, 5th Cir.1969, 408 F.2d 1085; Southern v. Board of Trustees for Dallas Independent School District, N.D.Tex. 1970, 318 F. Supp. 355; Carter v. Hodges, W.D.Ark. 1970, 317 F. Supp. 89; Whitsell v. Pampa Independent School District, N.D.Tex. 1970, 316 F. Supp. 852; Bishop v. Colaw, E.D.Missouri 1970, 316 F. Supp. 445; Livingston v. Swanquist, N.D.Ill. 1970, 314 F. Supp. 1; Giangreco v. Center School District, W.D.Missouri 1969, 313 F. Supp. 776; Gfell v. Rickelman, N.D.Ohio 1970, 313 F. Supp. 364; Corley v. Daunhauer, E.D.Ark. 1970, 312 F. Supp. 811; Brownlee v. Bradley County Tennessee Bd. of Education, E.D.Tenn. 1970, 311 F. Supp. 1360; Farrell v. Smith, D. Maine 1970, 310 F. Supp. 732; Neuhaus v. Torrey, N.D.Calif. 1970, 310 F. Supp. 192; Pritchard v. Spring Branch Independent School District, S.D.Tex. 1970, 308 F. Supp. 570; Wood v. Alamo Heights Independent School District, W.D.Tex. 1970, 308 F. Supp. 551; Stevenson v. Wheeler County Bd. of Educ., S.D.Ga. 1969, 306 F. Supp. 97, affirmed 5th Cir.1970, 426 F.2d 1154; Brick v. Board of Educ., D.Colo. 1969, 305 F. Supp. 1316; Canney v. Board of Public Instruction, Fla.App. 1970, 231 So.2d 34 [the validity of the regulation was not in issue]; Leonard v. School Comm. of Attleboro, 1965, 349 Mass. 704, 212 N.E.2d 468; Shows v. Freeman, Miss. 1969, 230 So.2d 63;

The following have favored the rights of students: Crews v. Clones, 7th Cir.1970, 432 F.2d 1259, reversing S.D.Ind. 1969, 303 F. Supp. 1370; Lansdale v. Tyler Junior College, E.D.Tex. 1970, 318 F. Supp. 529; Black v. Cothren, D.Neb. 1970, 316 F. Supp. 468; Cordova v. Chonko, N.D.Ohio 1970, 315 F. Supp. 953; Dunham v. Pulsifer, D.Vt. 1970, 312 F. Supp. 411; Lovelace v. Leechburg Area School Dist., W.D.Pa. 1970, 310 F. Supp. 579; Cash v. Hoch, W.D.Wis. 1970, 309 F. Supp. 346; Crossen v. Fatsi, D.Conn. 1970, 309 F. Supp. 114; Sims v. Colfax Community School Dist., S.D.Iowa 1970, 307 F. Supp. 485; Cabillo v. San Jacinto Junior College, S.D.Tex. 1969, 305 F. Supp. 857; Westley v. Rossi, D.Minn. 1969, 305 F. Supp. 706; Olff v. East Side Union H.S. Dist., N.D.Calif. 1969, 305 F. Supp. 557; Richards v. Thurston, D. Mass. 1969, 304 F. Supp. 449; Griffin v. Tatum, M.D.Ala. 1969, 300 F. Supp. 60, reversed in part, 5th Cir.1970, 425 F.2d 201; Zachry v. Brown, N.D.Ala. 1967, 299 F. Supp. 1360; Yoo v. Moynihan, 1970, 28 Conn.Sup. 375, 262 A.2d 814; Laine v. Dittman, Ill. App. 1970, 259 N.E.2d 824; Scott v. Board of Education, Sup.Ct. Nassau County 1969, 61 Misc.2d 333, 305 N.Y.S.2d 601. Wood v. Alamo Heights Independent School District, W.D.Tex. 1970, 308 F. Supp. 551, aff'd 5th Cir.1970, 433 F.2d 355.
[7] Cf. Canney v. Board of Public Instruction, Fla.App. 1970, 231 So.2d 34.
[8] See Fla. Stat. § 232.26, F.S.A.
[9] The Constitution on the Campus, 1969, 22 Vand.L.Rev. 1027.
[10] See also Van Alstyne, The Judicial Trend Toward Student Academic Freedom, 20 U.Fla.L.Rev. 290 (1968); Goldstein, The Scope and Sources of School Board Authority to Regulate Student Conduct and Status: A Nonconstitutional Analysis, 1969, 117 U.Pa.L.Rev. 373; Goldstein, Reflections on Developing Trends in the Law of Student Rights, 118 U.Pa.L.Rev. 612 (1970).