362 So.2d 371 (1978)
Carl James FERRARA, by His Parents and Next Friends, Carl Lamar Ferrara and Sherry Ferrara, and Carl Lamar Ferrara and Sherry Ferrara, On Their Own Behalf, Petitioners,
v.
The HENDRY COUNTY SCHOOL BOARD, Respondent.
No. 77-1819.
District Court of Appeal of Florida, Second District.
August 16, 1978.
*372 Bruce S. Rogow, Nova University Center for the Study of Law, Fort Lauderdale, and Terry De Meo, Staff Counsel, American Civil Liberties Union Foundation of Florida, South Miami, for petitioners.
Owen L. Luckey, Jr. of Luckey & Harrell, LaBelle, for respondent.
HOBSON, Judge.
This is a petition for certiorari to review the final order of the Hendry County School Board suspending the petitioner, Carl James Ferrara, from the Tenth Grade of Clewiston High School for the balance of the school year 1977-78.
A panel consisting of students, parents and teachers recommended to the school board a dress code which included "students are to be clean shaven." The school board adopted the dress code.
On September 21, 1977, the petitioner was suspended by the principal of Clewiston High School because he refused to shave the hair growing on his lip, which was clearly visible at a distance of at least 40 feet. The petitioners sought relief from this suspension in the United States District Court for the Southern District of Florida alleging violations of their federal constitutional rights. A hearing was held in the Federal District Court at which time testimony was taken on behalf of both the petitioners and the respondent. The District Court denied injunctive relief and an interlocutory appeal was taken to the Fifth Circuit Court of Appeals. After the Fifth Circuit denied an injunction pending appeal, the petitioners voluntarily dismissed all proceedings in the federal courts.
The Hendry County School Board held an expulsion hearing on November 1, 1977. At this hearing it was stipulated that the testimony before the United States District Court would be used as the evidentiary basis for the school board's decision. On the same day the school board suspended the petitioner for the balance of the school year and it is this final order which we have before us for review.
The question before us is strictly a matter of law. Petitioner claims that the Florida and Federal constitutions protect him from state intrusion into his personal and familial rights to privacy. Petitioner relies mainly upon Conyers v. Glenn, 243 So.2d 204 (Fla.2d DCA 1971) in which this court held that unless the school board can show some overriding necessity, the decision as to whether or not the minor student cuts his hair rests with his parents. This holding was based on Florida Constitution, Article I, § 9, and the United States Constitutional Amendment XIV, commonly known as due process.
In Conyers the minor was suspended from high school without a hearing for failure to cut his hair. He sought a temporary injunction in the circuit court and asked the court to order a hearing before the school board on his contention that the regulation violated his constitutional rights. The trial *373 court granted a temporary injunction permitting him to remain in school pending the final decision in his case. The trial court entered an order in which it found that he was not entitled to due process, the school board was not obligated to grant a hearing, and dismissed the complaint.
On that appeal to this court the primary question was whether or not he was entitled through due process to a hearing before the school board. In addition to holding that the student was entitled to a hearing, this court went further and held he would be denied his constitutional rights unless the school board could show some overriding necessity that would give the school board a reasonable basis on which to suspend him from school if he failed to cut his hair.
This court based its decision primarily on Tinker v. Des Moines Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). We now feel that our court misconstrued the Tinker case when it stated that Tinker was decided under the Fourteenth Amendment. A careful reading of Tinker shows that it was based on the First Amendment protection of free speech. In Tinker the United States Supreme Court stated:
The problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment... . It does not concern aggressive, disruptive action or even group demonstrations. Our problem involves direct, primary First Amendment rights akin to "pure speech."
The Conyers case was decided prior to Karr v. Schmidt, 460 F.2d 609 (U.S. Court of Appeals 5th Cir.1972). In Karr, a boy attempted to enroll for his junior year in high school but was not permitted to do so because he was in violation of a school board regulation limiting the length of male students' hair. The court there distinguished Tinker, as we do here, by noting that the language in Tinker quoted above indicates "that the right to style one's hair as one pleases in the public schools does not inherit the protection of the First Amendment." We do not perceive any distinction between the right to style one's hair and the right to grow a mustache.
With respect to individual or familial rights to privacy, this court in Conyers referred to Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), and stated:
But the one clear consequence of Griswold is that some showing of overriding public necessity is a necessary predicate to state action interfering with the freedom of the individual.
Yet the court in Karr analyzed Griswold in the following manner:
A second basis frequently asserted for such a constitutional right is found in an expansive reading of the Supreme Court's holding in Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). In that case, the court invalidated a Connecticut statute forbidding the use of contraceptives on the ground that it unjustifiably infringed the right of marital privacy. It is argued that from this holding may be generalized a pervasive constitutionally protected zone of personal privacy which may be infringed only for compelling reasons. See e.g. Bishop v. Colaw, 8 Cir.1971, 450 F.2d 1069.
In our view, such a reading of Griswold is unwarranted. We think Griswold rested somewhat narrowly on the unacceptable intrusion in the privacy of the home which would have been required to enforce the Connecticut statute. In contrast, a regulation restricting the length of hair restricts privacy not at all. Hair is, of course, worn for all the world to see. We do not think Griswold stands for any general "right to go public as one pleases."
As to substantive due process, we are in accord with the following holding in Karr:
C. Substantive Due Process.  Rather than relying narrowly on Griswold, it may be argued more generally that the right to wear hair at any length inheres in the "liberty" assurance of the Due Process Clause of the Fourteenth *374 Amendment. There is little doubt that the Due Process Clause has occasionally been relied upon in recent years as the source of substantive constitutional rights even where the rights were not specifically enumerated in the Bill of Rights. The right of marital privacy announced in Griswold is but one example of this recent emergence of substantive due process in the area of individual liberties. Other examples are the constitutional right to travel to foreign countries and the right to travel interstate. It is axiomatic, however, that federal courts should recognize such substantive constitutional rights only where "fundamental" individual liberties are at stake.
We think it plain that individual liberties may be ranked in a spectrum of importance. At one end of the spectrum are the great liberties such as speech, religion, and association specifically guaranteed in the Bill of Rights. Of equal importance are liberties such as the right of marital privacy that are so fundamental that, even in the absence of a positive command from the Constitution, they may be restricted only for compelling state interests. At the other end of the spectrum are the lesser liberties that may be invaded by the state subject only to the same minimum test of rationality that applies to all state action. See, e.g., Ferguson v. Skrupa, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963).
The question before this court is where on the spectrum lies the asserted right of a high school student to wear hair in school at the length that suits him. It is our firm belief that this asserted freedom does not rise to the level of fundamental significance which would warrant our recognition of such a substantive constitutional right. We are influenced in this decision by numerous factors. First, the interference with liberty is a temporary and relatively inconsequential one. The regulation in question does, after all, leave these students a rather wide range of personal choice in their dress and grooming. We do not have here "a nation bent on turning out robots ... insist[ing] that every male have a crew cut and every female wear pigtails." Secondly, we feel compelled to recognize and give weight to the very strong policy considerations in favor of giving local school boards the widest possible latitude in the management of school affairs. School administrators must daily make innumerable decisions which restrict student liberty. The briefs in this case afford an interesting sampling of the kinds of restrictions which have been held valid in the Texas state courts. Examples are regulations requiring students to park automobiles in a designated parking lot and not move them until a designated hour; forbidding students from leaving school grounds during recess and noon hour; prohibiting membership in high school fraternities and sororities; forbidding students from taking lunch except from the school cafeteria. Each of these regulations imposes restrictions on student liberty at least as substantial as the regulation here in question. It would require little imagination to formulate an equally plausible due process attack on the validity of each restriction. Does it follow that school officials should be called into federal court and given the burden of demonstrating "factually" that these restrictions serve "compelling" interests and that no "alternatives less restrictive of liberty" are available? We think not.
In conclusion, we hold that regulations such as involved here that do not affect fundamental freedoms are subject to a much less rigorous standard of judicial review than is applicable when such fundamental rights are at stake. In cases such as this, the standard of review is whether the regulation is reasonably intended to accomplish a constitutionally permissible objective. The burden is upon a petitioner to establish that the regulation is wholly arbitrary and not upon the school board to establish the rationality of it.
In this case the record establishes that the school board's regulation meets the test of rationality and was properly applied.
*375 We hereby recede from anything said in Conyers contrary to the views expressed herein.
The petition for certiorari is denied.
GRIMES, C.J., concurs specially.
OTT, J., concurs.
GRIMES, Chief Judge, specially concurring.
Had I been on the Hendry County School Board I doubt if I would have voted to prohibit a high school student from growing a mustache. But the Hendry County School Board saw fit to do so, and the question here is whether the petitioner was thereby denied a right of constitutional magnitude. I am persuaded that ordinarily matters such as these must be left in the hands of the officials who have been duly charged with the operation of our schools. So long as a particular regulation is not "wholly arbitrary," it should be upheld even though it may have the effect of impinging in some small degree upon an individual's freedom to do as he pleases.
Our courts must always be available to resolve the many serious controversies which cannot be avoided in today's complex society. Yet, our judicial system already staggers under a case load which threatens to make ready access to the courts more a myth than a reality. If the courts become embroiled in passing on the constitutionality of every conceivable public school regulation, there is a real possibility that persons with serious and legitimate grievances may never be able to get in the courthouse door.