### Gerald Yoo *v.* Timothy Moynihan, Jr., Chairman of the Board of Education of the City of East Hartford, et al.

Superior Court   Hartford County   File No. 163120

Memorandum filed December 16, 1969

*Kiefer & Holtman,* of Simsbury, for the plaintiff.

*Herbert Barall,* corporation counsel, for the defendants.

Levine, J.  The plaintiff herein has brought this action against the chairman of the board of education of East Hartford and the principal of the George J. Penney High School for a preliminary and permanent injunction forbidding the defendants from denying him the right to a public high school education.  A hearing was held only on his claim for a temporary injunction, and there still remains the trial of all the issues involved after the pleadings are closed.  His complaint alleges that he has been temporarily suspended or permanently expelled because of the length of his hair; that the defendants refuse to allow him to attend school; that they have exceeded their authority; and that they have acted contrary to the General Statutes of the state of Con-

necticut, to article first, § 9, of the Connecticut constitution, and to the constitution of the United States.

The facts produced at the court hearing indicate that on October 6, 1969, the plaintiff was called to the office of the dean of boys about a failure to attend a class, and on that occasion the vice principal told the plaintiff in effect that unless he had his hair cut shorter he could not attend school. He was also told at that time that his clothing and the style thereof should be altered. On November 7, 1969, he returned to the school to see the principal and the administrative assistant in charge of attendance, at which time he agreed to their suggested changes in his attire. They, however, remained adamant that before he could return to school he must cut his hair, which he would not do. On October 6 and November 7 his hair was combed down over his forehead to the top of his eyeglasses and then to the back of his head, and the hair at the rear of the head hung below his shirt collar. It should be noted that on the day he appeared in court his hair was combed normally for any male with a side part, except that the hair at the rear of the head still hung below his shirt collar.

The principal does not feel that the plaintiff has been either suspended or expelled from school but terms it an exclusion and feels that it follows the usual practice of sending a pupil home until a condition is corrected. The principal wrote the plaintiff's parents a letter about the matter and has based his actions on the authority of article 10, § 19, of the school regulations—the dress code which had been formulated by a committee of students, teachers, and members of the community, the board of education, and the Parent-Teacher Association—and on his duty to enforce the rules. The meeting by the committee referred to on the dress code did not equate

hairstyles and discipline, according to the chairman of the board of education, and the code did not include the teachers, whose hair and dress styles are not controlled.

Section 10-233 of the General Statutes authorizes the board of education to establish regulations authorizing the administrative staff of the schools to suspend pupils as a means of enforcing discipline. Section 10-234 authorizes the board of education to expel any pupil who, after a full hearing, is found guilty of conduct inimical to the best interests of the school. That statute requires written notice to the pupil's parents at least five days prior to the date of the hearing and a written report to the state board of education. The rules and regulations of the board of education restate the state statutes hereinbefore mentioned that suspension is by the principal and expulsion by the board of education after a hearing. Suspension is defined therein as "the exclusion of a pupil from school by an authorized member of the administrative staff for a specified and limited period of time." The evidence does not disclose that any attempt was made to proceed under § 10-234. What was done here comes within § 10-233, or at least attempts to; that statute provides for suspension by the administrative staff for violation of regulations—in this case the dress code enacted by the board of education. Clearly, the rules and regulations with regard to suspension were not followed, since no specified and limited period of time of suspension was set. Further in evidence is a letter from the vice principal to John Yoo, the plaintiff's father, dated October 9, 1969, stating that Gerald Yoo had been suspended for violation of the dress code. Whether the plaintiff was excluded, suspended or expelled is not of consequence since the final result was to prevent his attendance at school, where he had a right to be subject to his obeying the

rules and regulations legally authorized to be imposed by the school authorities and boards of education.

It would be a simple matter to state that the procedure for expulsion by the board of education was not attempted to be used, or that the suspension was incorrectly, and therefore illegally, handled in that no limited or specified time for the suspension was set, or that the rules and regulations do not provide for any procedure such as an exclusion. What happened to the plaintiff was that the vice principal, and subsequently the principal, attempted a suspension and achieved an expulsion, and all of the procedures used did not meet the requirements of the rules and regulations of the board of education or the state statutes. The real issue, however, is more serious and should be answered, and that issue is: Does the board of education have the legal right to prohibit certain hairstyles of the pupils? Since the plaintiff has agreed to meet the clothes requirements of the code, that issue is not involved. The "Recommended Dress Code by East Hartford Dress Code Committee," enacted by the board of education on April 1, 1969, contains the following provision: "Because of recognized changes in boys' hair styles, we will consider acceptable sideburns which extend as much as ½ inch below the bottom of the ear, but not beards or mustaches or hair which covers eyes, ears or collars." There is no question that Gerald Yoo's hair violated this provision. There is no evidence that the length of his hair was a disciplinary problem in that it caused disruption of any kind during school hours, or that it involved a health or sanitary risk to him or to others or would interfere with his or others' performance of their school work. The salient fact which indicates that his hair was not a disciplinary problem is that not until he was called in by the

vice principal about another matter was the length of his hair noted. See *Burnside* v. *Byars,* 363 F.2d 749.

It is the plaintiff's claim that the United States constitution protects his personal freedom to determine his own hairstyle. That freedom is set forth by the United States Supreme Court in *Griswold* v. *Connecticut,* 381 U.S. 479, as contained within the penumbra of the constitutional amendments in which the privacy of an individual is protected from governmental intrusion, and while the amendments to the constitution do not specifically spell out the right of privacy, it exists by reason of the content and intent of those amendments. "[T]he right of privacy is a fundamental personal right, emanating 'from the totality of the constitutional scheme under which we live.' " Id., 494. Quoting from a dissenting opinion in *Olmstead* v. *United States,* 277 U.S. 438, 478, the court in *Griswold* stated (p. 494) : "The protection guaranteed by the [Fourth and Fifth] Amendments is much broader in scope. The makers of our constitution undertook to secure conditions favorable to the pursuit of happiness. They recognized the significance of man's spiritual nature, of his feelings and of his intellect. They knew that only a part of the pain, pleasure and satisfaction of life are to be found in material things. They sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the Government, the right to be let alone—the most comprehensive of rights and the right most valued by civilized men." The hairstyle of a person falls within the right of privacy which protects his beliefs, thoughts, emotions and sensations, and the board of education has no legal ground to proscribe the hairstyle of a pupil when the board interferes with his right to self-expression in the styling of his hair. His

right to style his hair as he pleases falls within the penumbra of the constitution which protects his right of privacy and his right to be free from intrusion by the government.

It has been contended herein that disruption of school procedures will occur as a result of the reactions of other students to the plaintiff's hairstyle. This contention was best answered by the United States Supreme Court in *Tinker* v. *Des Moines Independent Community School District*, 393 U.S. 503, 508, where the court said: "The District Court concluded that the action of the school authorities was reasonable because it was based upon their fear of a disturbance from the wearing of the armbands. But, in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression. Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunchroom or on the campus, that deviates from the views of another person, may start an argument or cause a disturbance. But our Constitution says we must take this risk, *Terminiello* v. *Chicago*, 337 U.S. 1 . . . (1949); and our history says that it is this sort of hazardous freedom—this kind of openness—that is the basis of our national strength and of the independence and vigor of Americans who grow up and live in this relatively permissive, often disputatious society."

It should be noted that in accord with this memorandum are, among other cases, *Richards* v. *Thurston*, 304 F. Sup. 449 (1969); *Breen* v. *Kahl*, 296 F. Sup. 702 (1969); and *Griffin* v. *Tatum*, 300 F. Sup. 60 (1969). To the opposite effect are cases including *Crews* v. *Cloncs*, 303 F. Sup. 1370 (1969); and *Ferrell* v. *Dallas Independent School District*, 392 F.2d 697 (1968).

For the reasons stated, a temporary injunction shall issue forbidding the defendants from denying the plaintiff the right to, and the opportunity for, a public high school education, including his right to attend regular classes of the George J. Penney High School.