Charles Laine, a Minor, and Sulo M. Laine, Individually and as Father and Next Friend, Plaintiffs-Appellants, v. Albert L. Dittman, Arthur Blecky, Warren Polly, and William E. Brook, Robert Denman, August C. Costoff, Dr. Albert Bucar, Robert Lindblad, Mrs. Bette Meyer, and William E. Petty, Each Individually and as the Board of Education of Antioch Community High School, District No. 117, County of Lake and State of Illinois, a Municipal Corporation, Defendants-Appellees.

Gen. No. 69–165.

Second District.

June 22, 1970.

Peter J. Collins, and Jeffrey Diver, of Waukegan, for appellants.

Larson and Lumber, of Antioch, for appellees.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

On September 4, 1969, the first day of school of the new term, Charles Laine, a 17-year-old junior at Antioch Community High School, was advised by Arthur Blecky, the Dean of Boys, not to return to school until his hair was cut and his sideburns shaved. On September 5, 1969, Sulo M. Laine, the father of Charles, was notified by letter from Albert Dittman, Superintendent of the school, that Charles was suspended from school for his failure to comply with a "Grooming Code" and that unless he returned to school by September 9 "properly groomed" a special meeting of the Board of Education would consider his expulsion. On September 8, Charles and Sulo Laine filed a verified complaint in the Circuit Court of Lake County against the members of the board and certain administrative personnel of the school that charged, among other things, that the Grooming Code, as far as it pertained to the length and style of the boy's hair, violated the constitutions of the United States and the State of Illinois.

The trial court entered a temporary injunction without notice on that date restraining the board from proceeding with a special meeting to consider the expulsion of Charles and to refrain from "not admitting" him to school. A full hearing was held on September 18, after which the court dissolved the temporary injunction and

refused to issue a permanent injunction. An appeal was immediately taken from that order and we ordered that the temporary injunction be kept in full force and effect during the pendency of the appeal pursuant to Supreme Court Rule 305. (Ill Rev Stats 1967, c 110A.)

The "Parent and Student Handbook" of Antioch Community High School, adopted in July of 1969, as it pertains to boys and to grooming and hair provides:

"6. Hair must be neat and well-groomed. Extreme or bizarre hair styles not acceptable.

"7. Clean shaven."

A memorandum opinion filed by the trial judge states that as of September 18 Charles had long hair combed back shoulder length and that the entire sides of his face were covered with hair.

Charles Laine testified that he started classes on September 4 that proceeded without incident until the 5th period, when he was called from a study hall and sent home by the dean of boys because he was not properly groomed. He returned to school on September 9, pursuant to the injunction, and attended 42 classes in the next 7 days until the date of the hearing. On cross-examination, Charles admitted that various unkind remarks were made to him by other students and that he was the object of whistles in the halls of the school. On September 10 he requested that he be assigned somewhere other than the cafeteria for lunch since he heard rumors of possible harassment. Charles testified that in his opinion present society is "very sick" and that his hair style is meant to set him apart from other people.

Arthur Blecky testified that as dean of boys he was charged with the maintenance of discipline within the school. He had been informed by teachers that on two occasions petitions were distributed in class by students against the hair style worn by Charles and that approxi-

138

mately 20 students personally complained to him. He also observed that other students made derogatory remarks to Charles and whistled at him when he passed in the hall but admitted that this did not disturb classwork since it occurred between classes. In his opinion, there was an "air of tension in the student body," a feeling that he was "on a safety valve" as a result of Charles' appearance that had affected the "climate of the school."

Arthur Dittman testified that as Superintendent he and certain other personnel, including Mr. Blecky, determined what hair style was "bizarre" and that in his opinion a bizarre hair style was anything that was "not normally worn by the boys" at Antioch. He testified that "an explosive situation" existed at the school as a result of Charles' hair and that he diligently supervised the situation to avoid a confrontation. Teachers were assigned to patrol the halls and although no explosion had yet occurred, the tension was becoming "tremendously worse."

Norman Hahn, a history teacher, also observed students whistle at Charles between classes and on one occasion they attempted to present him with a dress. It was in his classroom that a petition was circulated by students. Hahn stated that Charles ignored the remarks, whistles and proffered gift and, in fact, took no action in response to his fellow, displeased students.

The trial judge indicated in his memorandum opinion that it was not necessary to consider the constitutional aspects of the Grooming Code to make a determination since the school officials would be within the proper exercise of their powers to suspend or expel Charles under the circumstances with or without such a Code. Although no authority is cited for this conclusion, we presume it is based on those powers conferred upon school boards by the School Code to adopt all necessary rules, to suspend and/or expel students and to maintain dis-

139

cipline. (Ill Rev Stats 1967, c 122, §§ 10–20.5, 10–22.6, and 24–24.)

█ It is well known, however, that a school board is not immune from the application of constitutional limitations and its actions are subject to the same scrutiny as any other governmental body. The United States Supreme Court in the 1943 case of West Virginia State Board of Education v. Barnette (319 US 624, 637, 638) said in regard to local school boards:

> "Such Boards are numerous and their territorial jurisdiction often small. But small and local authority may feel less sense of responsibility to the Constitution and agencies of publicity may be less vigilant in calling it to account . . . . There are village tyrants as well as village Hampdens, but none who acts under color of law is beyond reach of the Constitution."

In the more recent case of Tinker v. Des Moines Independent Community School Dist., 393 US 503, 21 L Ed 2d 731, 89 S Ct 733, (February, 1969), the Supreme Court considered the explusion by a local school board of certain students who wore black armbands to protest the Vietnam War in relation to the First Amendment guarantee of free speech, and said at p 506:

> "First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate. This has been the unmistakable holding of this Court for almost 50 years."

Until recently, the number of reported cases that relate to the constitutional aspects of Hair or Grooming Codes promulgated by local school boards were few. Gen-

140

erally, it was held that unusual hair style, like any other conspicuous departure from accepted custom, could result in the distraction of other pupils and was, therefore, subject to reasonable regulation by local school boards. Crews v. Cloncs, 303 F Supp 1370; Leonard v. School Committee of Attleboro, 349 Mass 704, 212 NE2d 468.

The subject has been recently reconsidered by the courts in a manner more sensitive to the rights of individual expression. In Breen v. Kahl, 419 F2d 1034 (December, 1969), cert denied 6/1/70, the Circuit Court of Appeals, 7th District, considered a regulation of a local school board in Wisconsin that provided that "Hair should be washed, combed, and worn so it does not hang below the collar line in the back, over the ears on the side and must be above the eyebrows. Boys should be clean-shaven; long sideburns are out." The District Court had found that the expulsion of certain students for violation of this regulation was unconstitutional as a denial of due process and equal protection of the laws where the distraction caused by the length of hair worn by the expelled students was not "so aggravated, so frequent, so general and so persistent" to justify an abridgement of their right to individual freedom. In its opinion the 7th Circuit held at p 1036:

> "The right to wear one's hair at any length or in any desired manner is an ingredient of personal freedom protected by the United States Constitution."

The Court does not specify if this right is one guaranteed under the first amendment as a species of free speech or expression or an "additional fundamental right" of the 9th amendment but does state that it is applicable to the States through the due process clause of the Fourteenth Amendment. The court then adopted the test of the recent case of Griswold v. Connecticut, 381 US 479, in holding:

"To limit or curtail this or any other fundamental right, the state has a 'substantial burden of justification.'"

The court concluded that since the record contained no evidence that the long hair of the students created any disturbance, the board had failed to sustain the burden of substantial justification and affirmed the trial court.

The Antioch school board is not unmindful of the Breen and other decisions but contends that the record in this case clearly shows that the long hair of Charles Laine was a serious disturbance to the operation of the school and that they therefore sustained the burden of "substantial justification."

It is clear that the right of personal choice in the matters of hair length or style as in other areas of personal appearance is not unlimited. However, the doctrine of the Breen case required that it can only be abridged or curtailed by a school board where the exercise of that right creates an actual disturbance or disruption to the orderly process of school functions. In the Breen case, there was testimony to the effect that other students were distracted by the long hair of the dissident students but, as we have seen, the court concluded that this alone was not evidence of a "disturbance." Here, the evidence shows that approximately 20 students in a school body of over 1,200 expressed complaint in regard to the length of Charles Laine's hair. On two occasions petitions were circulated by students that delayed the start of class. Although there was whistling at Charles in the hall, the dean of boys admitted that this itself was not a disturbance or, indeed, even irregular. The bulk of the evidence in regard to a disturbance was of the diffuse and apparently unfounded fears of the school administration that a major crisis was on hand. The description of the situation as "explosive" or as a "confrontation" appears

142

to reflect the anxieties of the school personnel rather than the reaction of the other students.

Although we realize that the Tinker case, quoted earlier, expressly did not apply to school regulations of hair or dress, we believe that certain language in that case is pertinent to the problem before us. There the court stated at pages 508 and 509:

"But, in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression. Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunchroom, or on the campus, that deviates from the views of another person may start an argument or cause a disturbance. But our Constitution says we must take this risk, Terminiello v. Chicago, 337 US 1, 93 L Ed 1131, 69 S Ct 894 (1949); and our history says that it is this sort of hazardous freedom—this kind of openness—that is the basis of our national strength and of the independence and vigor of Americans who grow up and live in this relatively permissive, often disputatious, society."

We do not feel that the evidence before us is sufficient to justify the abridgment of the right of Charles Laine to wear his hair as he sees fit. The judgment of the trial court is, therefore, reversed and remanded with instructions to enter an order that the defendants be permanently restrained and enjoined from attempting to suspend or expel Charles Laine because of the length or style of his hair.

Reversed and remanded with instructions.

DAVIS, P. J. and SEIDENFELD, J., concur.