INDEPENDENT SCHOOL DISTRICT NO.
8 OF SEILING, DEWEY COUNTY,
State of Oklahoma, Petitioner,

v.

The Honorable J. Russell SWANSON of the
Fourth Judicial District, Garfield Coun-
ty, Oklahoma, et al., Respondents.

No. 48253.

Supreme Court of Oklahoma.

June 1, 1976.

J. Harry Johnson, Oklahoma City, Larry L. French, Edwards & French, Seminole, for petitioner.

Andrew J. Moore, Woodward, Tom J. Ruble, Taloga, for respondent Ruble.

Shirley Collier, Collier & Fahle, Taloga, for respondent Peters.

SIMMS, Justice.

This litigation concerns the validity of a student hair code adopted by the Board of Education of the Seiling Public School District. Plaintiffs are four male students of the district (one each from the high school and junior high, and two from the elementary school) who were threatened with imminent suspension by their respective principals, if, within five days, they failed to cut their hair so that the length conformed to that required by the code.

The code in question required boys to wear their hair "above [the] eyebrows, collars and ears" and the high school boys were further required to have their hair well-groomed at all times and to wear their sideburns no longer than the bottom of the earlobes.

Through their next friends, the students sought a restraining order from the District Court of Dewey County to prohibit the Board and its agents from suspending or expelling them for failure to come within the code provisions.

The students alleged, inter alia, that the hair regulation denied them rights of individual freedom and liberty guraranteed under various provisions of the Federal and State Constitutions, and deprived them of the right to a free education guaranteed by the Constitution of Oklahoma. Further, that the Seiling School Board acted outside the scope of its statutory authority in adopting the hair code as it had no reasonable connection to the educational function of the school, and that the manner of the enforcement of the regulation denied them procedural due process. The students asserted that unless restrained, the school authorities would suspend and expel them

and that they would suffer irreparable harm and damage.

The district court granted plaintiffs the relief they sought and a date was set for hearing on temporary injunction. Essentially, the subsequent procedural steps were these. The Board applied to this Court for extraordinary relief, requesting us to assume original jurisdiction of the matter and to compel the trial court, by writ of mandamus, to set a hearing date earlier than that originally scheduled. We did assume original jurisdiction and returned the matter to the trial court with instructions to hold an evidentiary hearing "without undue delay" and to enter findings of fact and conclusions of law thereon, same to be forwarded to this Court together with the transcript of the hearing.

Hearing was held, and evidence was presented by both parties. The district court held in favor of the plaintiff students, enjoining the school board and its agents from further enforcement of the code. For reasons set forth below, we accept the findings of the trial court and affirm that judgment.

Plaintiffs' evidence showed that they were good students and that aside from hair code problems, they had not been involved in any disciplinary actions. The length of their hair had no effect on their desire or ability to learn and it did not have any effect on the learning processes of the other students. The length of their hair did not disrupt other students and, in fact, the only hair related disruption problems in the Seiling Schools came about from the enforcement of the code. Plaintiffs' expert winess, a clinical psychologist, testified that she had never observed any relationship between the length of a person's heir and their motivation to learn, nor was she aware of any such relationship. A school administrator from another district testified that his school had abandoned its hair code as the atmosphere created by its enforcement caused the school to resemble a "police state" more than a learning institution. He stated that he had

not been able to determine any connection between learning and hair length, since learning resulted from processes within the brain cells, not hair cells.

The School Board's evidence showed that Seiling had "always had" a dress code and that it became the written policy of the school in 1972. No reason for the adoption of the code was offered. Testimony from school administrators from other districts showed that they were of the opinion that hair codes served a purpose in their respective districts. One administrator thought that with the implementation of a dress code, the students developed pride in their school. Another felt that students will only perform to standards which are set for them and that the administration therefore set the standards high. As he was of the opinion that manner of dress was a part of education and character building, restrictions on dress were necessary. Another administrator was of the opinion that every institution needed certain rules and regulations in order to carry out the functions entrusted to it. None of these administrators' opinions were supported by facts showing a cause and effect relationship between short hair and better education in their respective schools.

The district court held the hair code was unreasonable. In part, the trial court observed as follows:

"[T]hat it is true, proper and necessary for a school board or a school administration to make proper, appropriate, and reasonable rules, and to enforce those rules in a proper, lawful manner. . . . [However] the testimony in evidence here shows that length of hair does not affect the person whose hair it is in their ability to learn or desire to learn, and neither does it disrupt any other student's ability to learn or desire to learn. . . . [A]lthough rules are necessary, the purpose of rules is to guide a group so that no one individual infringes upon or interferes with the rights or liberties of any other individual, and this particular rule about

hair does not rise to that standard. Apparently, the only purpose in this rule is to make a rule. . . . [D]iscipline is necessary, but also discipline must be reasonable and for a legitimate, proper purpose."

The School Board challenges the ruling of the district court, asserting in its briefs the following positions: that the length of a student's hair does not involve constitutional issues; that in adopting this hair code the Board acted within its statutory power; and that this entire matter falls within the Board's proper exercise of its discretionary power to preserve discipline in the schools. The Board further contends that questions of procedural due process raised by the students are not properly in issue as no suspension or expulsion occurred due to the issuance of the restraining order.

At the outset, we find that the Board's position regarding the procedural aspects of these intended suspensions is correct. As no suspensions or expulsions took place, we do not find it necessary to pass on the acceptability of the intended suspension procedures in light of the holding of *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L. Ed.2d 725 (1975), which established the right of students to receive procedural due process protections when facing a temporary suspension from public school.

We also agree with the School Board's position that upon the facts of this case, the rights of students to control the length of their hair does not raise substantive constitutional issues.

We are of the opinion that the question presented is whether, in adopting that protion of the dress code disputed here, the School Board acted beyond the proper scope of the statutory power granted that board to adopt regulations governing student behavior.

In deciding this question, we are greatly persuaded by a leading writer in the area that:

". . . a preoccupation with constitutional issues has distorted both the constitutional and nonconstitutional questions involved. For example, the issue of the power of the school board to prohibit extreme hair and dress styles often has been joined as freedom of expression versus state power, distorting both the first amendment and the legislative delegation of power to school boards. . ."
*Goldstein, The Scope and Sources of School Board Authority to Regulate Student Conduct and Status; A nonconstitutional Analysis,* 117 U.Pa.L.Rev. 373, 377 (1969).

Even a cursory study of the federal "hair" cases reveals wide variance of opinion concerning the constitutional dimensions of students' rights to wear their hair at the length of their choice. The circuits are divided as to whether a constitutional question is presented.[1] Those courts which

---

1. Hair regulations have been invalidated by the First Circuit, *Richards v. Thurston,* 424 F.2d 1281 (1st Cir. 1970) ; the Third Circuit, *Stull v. School Board of the Western Beaver Jr.-Sr. H. S.,* 459 F.2d 339 (3rd Cir. 1972) ; but see, *Zeller v. Donegal School Dist. Bd. of Education,* 517 F.2d 600 (3rd Cir. 1975) ; the Fourth Circuit, *Massie v. Henry,* 455 F.2d 779 (4th Cir. 1972) ; the Seventh Circuit, *Breen v. Kahl,* 419 F.2d 1034 (7th Cir. 1969), cert. denied, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970) ; *Swanquist v. Livingston,* No. 18663 (7th Cir., May 27, 1971), cert. denied 404 U.S. 983, 92 S.Ct. 445, 30 L.Ed.2d 367 (1971) ; *Crews v. Cloncs,* 432 F.2d 1259 (7th Cir. 1970) ; *Arnold v. Carpenter,* 459 F.2d 939 (7th Cir. 1972) ; *Holsapple v. Woods,* 500 F.2d 49 (7th Cir. 1974),

cert. denied, 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 ; and the Eighth Circuit, *Bishop v. Colaw,* 450 F.2d 1069 (8th Cir. 1971). Hair regulations have been upheld by the Fifth Circuit, *Ferrell v. Dallas Indep. School Dist.,* 392 F.2d 697 (5th Cir.), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968) ; *Wood v. Alamo Heights Indep. School Dist.,* 433 F.2d 355 (5th Cir. 1970) ; *Stevenson v. Board of Educ. of Wheeler County, Georgia,* 426 F.2d 1154 (5th Cir.) cert. denied, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970) ; *Karr v. Schmidt,* 460 F.2d 609 (5th Cir. 1972), cert. denied 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256 (1972) ; the Sixth Circuit, *Jackson v. Dorrier,* 424 F. 2d 213 (6th Cir.), cert. denied, 400 U.S. 850, 91 S.Ct. 55, 27 L.Ed.2d 88 (1970) ; *Gfell v.*

have found that the Constitution insures and protects a student's right to determine his individual personal appearance, do not agree as to the source and nature of that right.[2] Even though the circuits are divided, the Supreme Court has consistently denied certiorari.[3] Likewise, State Courts are divided in their holdings[4] and those cases invalidating regulations often utilize widely divergent rationales.[5]

We also agree with Justice Breitenstein's observation in *Freeman v. Flake*, 448 F.2d 258, 261, (10th Cir. 1971) that this problem should be resolved through state procedures, because:

"The states have a compelling interest in the education of their children. The states, acting through their school authorities and their courts, should determine what, if any, hair regulation is necessary to the management of their schools."

Oklahoma has made a public commitment to the education of its young people. The Constitution makes the offer of a free public education to children of school age who are sound in mind and body obligatory on the part of the state.[6]

Supervision of instruction in the several schools is vested in a State Board of Education.[7] The Legislature has established local boards of education as the governing body of each school district[8] and has given them the power to ". . .

*Rickelman*, 441 F.2d 444 (6th Cir. 1971); the Ninth Circuit, *King v. Saddleback Junior College Dist.*, 445 F.2d 932 (9th Cir. 1971); *Olff v. East Side Union High School Dist.*, 445 F.2d 932 (9th Cir. 1971), cert. denied, 404 U.S. 1042, 92 S.Ct. 703, 30 L.Ed.2d 736 (1972); and the Tenth Circuit, *Freeman v. Flake*, 448 F.2d 258 (10th Cir. 1971); *New Rider v. Board of Education*, 480 F.2d 693 (10th Cir. 1973); *Hatch v. Goerke*, 502 F.2d 1189 (10th Cir. 1974).

2. *See, e. g., Richards v. Thurston*, 424 F.2d 1281 (1st Cir. 1970), Right implicit in liberty assurance of Due Process Clause of Fourteenth Amendment; *Massie v. Henry*, 455 F. 2d 779 (4th Cir. 1972), Right to be secure in one's person guaranteed through Due Process Clause with overlapping equal protection considerations; *Breen v. Kahl*, 419 F.2d 1034, cert. denied 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970), Ingredient of personal freedom protected by Constitution, whether designated as a penumbral or Ninth Amendment right, it exists and applies to the states through Fourteenth Amendment. *See generally*, Note, 84 Harv.L.Rev. 1702 (1971); Goldstein, Reflections of Developing Trends in the Law of Student Rights, 118 U.Pa.L.Rev. 612 (1970).

3. See generally note 1. While the recent United States Supreme Court decision of *Kelley v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708, 44 U.S.L.W. 4469 (1976), did involve constitutional challenges to a hair regulation, it does not resolve any issues presented here as Kelley, supra, concerned only appearance restrictions on government employees.

4. State Court decisions which have invalidated school hair regulations include: *Murphy v. Pocatello School Dist. # 25*, 94 Idaho 32, 480 P.2d 878 (1971); *Yoo v. Moynihan*, 28 Conn.Sup. 375, 262 A.2d 814 (1969); *Neuhaus v. Federico*, 12 Or.App. 314, 505 P.2d 939 (1973); *Meyers v. Arcata Union High School Dist.*, 269 Cal.App.2d 549, 75 Cal. Rptr. 68 (1969); *Conyers v. Glenn*, 243 So. 2d 204 (Fla.App.1971); *Breese v. Smith*, 501 P.2d 159 (Alaska 1972); *Graber v. Kniola*, 52 Mich.App. 269, 216 N.W.2d 925 (1974); *Laine v. Dittman*, 125 Ill.App.2d 136, 259 N.E.2d 824 (1970); *Warren v. Bd. of Education, Perry Local Sch. Dist.*, 41 Ohio Misc. 87, 322 N.E.2d 697 (1974).

State Court decisions which have upheld school hair regulations include: *Leonard v. School Committee of Attleboro*, 349 Mass. 704, 212 N.E.2d 468 (1965); *Shows v. Freeman*, 230 So.2d 63 (Miss.1969); *Dunkerson v. Russell*, 502 S.W.2d 64 (Ky.1973); *Pendley v. Mingus, U.H.S. Dist. No. 4 of Yavapai County*, 109 Ariz. 18, 504 P.2d 919 (1972); *Blaine v. Board of Ed. Haysville U. Sch. Dist. # 261*, 210 Kan. 560, 502 P.2d 693 (1972).

5. *See, e. g., Meyers v. Arcata Union High School Dist.*, 269 Cal.App.2d 549, 75 Cal. Rptr. 68 (1969), First Amendment freedom of expression justification; *Murphy v. Pocatello School Dist. # 25*, 94 Idaho 32, 480 P. 2d 878 (1971), and *Yoo v. Moynihan*, 28 Conn.Sup. 375, 262 A.2d 814 (1969), Ninth Amendment right of privacy rationale; *Breese v. Smith*, 501 P.2d 159 (Alaska 1972), state constitutional grounds; *Warren v. Bd. of Education, Perry Local Sch. Dist.*, 41 Ohio Misc. 87, 322 N.E.2d 697 (1974), and *Graber v. Kniola*, 52 Mich.App. 269, 216 N.W.2d 925 (1974), finding rule not reasonably related to proper educational function.

6. Okla.Const., Art. XIII, §§ 1, 1a.

7. Okla.Const., Art. XIII, § 5.

8. 70 O.S.1971, § 5–106.

make rules and regulations, not inconsistent with the law or rules and regulations of the State Board of Education, governing the board and the school system of the district; [and] to maintain and operate a complete public school system of character as the board of education shall deem best suited to the needs of the school districts . . . ." [9]

■ There is no doubt that the rule making power of local school boards includes the area of student conduct, as the legislature has also provided that student compliance with rules may be enforced through suspension from school. 70 O.S. Supp.1975, § 24–101 provides in pertinent part that:

"Any pupil who is guilty of . . . violation of the regulations of a public school may be suspended by the principal teacher of such school, which suspension shall not extend beyond the current school semester and the succeeding semester . . . ."

■ What then are the proper limitations of this rule making power? Like all other governmental bodies created by statute, school boards possess only that power derived from statutory enactment and may not exercise unrestricted authority over persons. A school board, of course, does not have ". . . general legislative powers over youths in its geographic territory . . . [its] charge is limited to the regulation of public education." *Goldstein, supra,* at 387.

The factual situation of *Board of Education of Oklahoma City v. Cloudman,* 185 Okl. 400, 92 P.2d 837 (1939) concerned the personal liability of a school board member for an expenditure later declared illegal by the courts, but the powers of a school board were there outlined by the court, as follows:

"The school board has and can exercise those powers that are granted in express

words; those fairly implied in or necessarily incidental to the powers expressly granted, and those essential to the declared objects and purposes of the corporation." at 841.

■ We are convinced that the scope of a school board's rule making authority is limited to adopting rules that have a reasonable connection with the educational function entrusted to it by the public.

The necessity for this limitation is obvious when consideration is given to the interests and rights of those affected by school regulations, i. e., students and their parents. It is against these interests and rights that the authority of a school to control student behavior must be balanced.

Children in Oklahoma are legally entitled to a free public education. The state requires them to take advantage of this opportunity by making attendance compulsory.[10] A child's failure to attend school can result in juvenile court proceedings against him [11] and possible criminal prosecution of his parents.[12]

We take judicial notice of the immeasurable social, psychological and economic value of an education in contemporary society. The Supreme Court of the United States recognized in *Goss v. Lopez, supra,* that even temporary suspension from school is not a *de minimis* deprivation and that it is a serious event in a child's life.

■ In view of the explicit state commitment to the education of each child, it is certain that while a student's right to be present in school is not absolute, any rule which would exclude him must exist for a reasonable and necessary purpose. Otherwise the loss of an education could result from failure to conform to a purely arbitrary standard.

In *Nutt v. Board of Education,* 128 Kan. 507, 278 P. 1065 (1929), the Supreme Court of Kansas held against a school board's at-

---

9. 70 O.S.1971, § 5–117.

10. Okla.Const., Art. XIII, § 4; 70 O.S. Supp.1975, § 10–105.

11. 10 O.S.Supp.1975, § 1101(c).

12. 70 O.S.Supp.1975, § 10–105.

tempt to deny admission to a girl because she was married. The court stated:

"The public schools are for the benefit of children within school age, and efficiency ought to be the sole object of those charged with the power and privilege of managing and conducting the same, and while great care should be taken to preserve order and proper discipline, it is proper also to see that no one within school age should be denied the privilege of attending school unless it is clear that the public interest demands the expulsion of such pupils or a denial of his right to attend."

While we do not feel it necessary to speak at length of the integrity of the family unit or to set forth any of the many decisions which have protected family relationships from unreasonable governmental interference, the rights of parents to direct and control the upbringing and education of their children must also be balanced against the authority of a school board to control and regulate its pupils.

It is clear that the rights and interests of students and their parents are not absolute and that at times the very nature of our public school system demands that their interests yield to the authority of the school board. It is equally clear that the scope of the school board's power is not unrestricted. Only through the existence of a reasonable connection between the rule and a proper purpose of the educational function of the school can a balance of these competing interests be achieved. This necessary balance is one which will preserve the important rights of children and their parents, while recognizing the very real need of schools to have and enforce rules that insure "proper discipline, efficiency, and well-being." [13]

Professor Goldstein suggests that a useful method of analysis in reaching this ultimate question of a reasonable connection between a rule and a purpose of the school is to determine whether the behavior regulated is an in-school or out-of-school activity. See, generally *Goldstein, supra*. Obviously, a school board is more likely to be able to produce facts whch demonstrate a reasonable connection between a rule and the educational process when the rule controls only in-school activity. Thus, he illustrates that a school rule prohibiting metal plated shoes was upheld in *Stromberg v. French*, 60 N.D. 750, 236 N.W. 477 (1931) upon a finding that the shoes caused greater than normal wear on floors and created disruptive noise. In sustaining the school's interest in the preservation of its floors and maintenance of quiet, the court noted that "in most instances, the right of the parent is paramount, but sometimes the interests of the public generally require that the parent shall give way."

At the other end of the spectrum, rules regulating purely out-of-school behavior were struck down by the courts in *Dritt v. Snodgrass*, 66 Mo. 286, 27 Am.Rep. 343 (1877) (rule forbidding students from attending parties in the evenings); and, *Hobbs v. Germany*, 94 Miss. 469, 49 So. 515 (1909) (rule requiring students to stay in their homes and study between 7 p. m. and 9 p. m.).

In *Dritt, supra,* the court examined the situation of a student and explained that:

"For his conduct while at school, he may be punished or even expelled, under proper circumstances; for his conduct when at home, he is subject to domestic control. The . . . [school board], in prescribing the rule that scholars who attend a social party should be expelled from school, *went beyond their power,* and invaded the right of the parent to govern the conduct of his child, when solely under his charge." (emphasis supplied)

A determination of the regulated behavior as purely in-school or out-of-school activity or a mixture of both, is not conclusive. Some courts have upheld rules dictating out-of-school behavior while others

---

13. *School Board Dist. No. 18 v. Thompson*, 24 Okl. 1, 103 P. 578, 579 (1909).

have declared invalid rules regulating in-school activity. See, generally, *Goldstein, supra.* This does, however, furnish a useful perspective from which to weigh the facts put forth to determine the reasonableness of the connection of a school rule with a proper purpose of the school.

Under this analysis, how does the Seiling hair code measure up? We must agree with the Court of Appeals of Oregon in *Neuhaus v. Federico,* 12 Or.App. 314, 505 P.2d 939 (1973) that, while the intention of such a rule is to control hair length during school hours, its necessary effect is to control hair length for 24 hours a day and out-of-school activity is therefore regulated more than is in-school activity. Since hair cannot, in the nature of things, be short at school and yet the length preferred by a student and his parent at other times, this rule is more akin to a regulation forbidding students from attending parties in the evening, than one prohibiting metal shoes in a school building.

> "Students are in or around high schools about 7 hours a day, about 180 days a year, for a total of 1260 hours. Yet there are about 5340 additional hours in a nine-month academic year. Requiring hair to be short for the 1260 in-school hours necessarily requires hair to be short the additional 5340 out-of-school hours." [14] at 944.

■ A rule imposing such a significant invasion into the private lives of children and their parents requires a showing of greater justification and demonstrable need by the school board than one regulating purely in-school appearance, such as a rule about lengths of skirts.

■ This case does not present any burden-of-proof problems which we need to resolve. The question here is whether the school board had the authority to adopt this rule. The plaintiffs came forward with evidence that their hair length did not have any effect on the educational processes of the school system. It was, then incumbent on the school board to show that the adoption of the rule was within their statutory power by producing facts that demonstrated a reasonable connection between the rule and a proper function of the school. This they failed to do. The record is void of any factual showing which establishes a reasonable connection between this rule controlling hair length of male students and a proper function of the Seiling Public Schools. By its failure to demonstrate this reasonable connection the Seiling School Board did not sustain its burden of showing that the adoption of the rule was within its statutory power.

In briefs, the school board relies on the decisions of *Pendley v. Mingus U.H.S.Dist. No. 4 of Yavapai County,* 109 Ariz. 18, 504 P.2d 919 (1972); and *Blaine v. Board of Ed. Haysville, U.Sch.Dist. #261,* 210 Kan. 560, 502 P.2d 693 (1972) which upheld hair codes. This reliance is misplaced, as in both cases the evidence showed that long hair on students created disturbances that interfered with the educational process.

■ We therefore conclude, and so hold, that the School Board acted outside the scope of its statutory authority in adopting the rule. In so holding, we are not unsympathetic with the enormous task that school administrators face in trying to educate our children, many of whom are unwilling scholars and are not well behaved. Certainly, the school board is empowered to adopt and enforce those rules which are necessary to create and preserve a proper atmosphere for learning to take place, just as they have the authority to pass rules which insure the safety of students and preservation of school property.

This rule does not rise to that standard and is essentially nothing more than a govermnental declaration of fashion and style. We cannot sanction exclusion from the ed-

---

14. While we are persuaded by the court's legal reasoning in *Neuhaus,* we do not warrant the correctness of their mathematical calculations.

ucational system for failure to conform to this dictate.

Judgment affirmed.

WILLIAMS, C. J., HODGES, V. C. J., and DAVISON, IRWIN, LAVENDER and DOOLIN, JJ., concur.

BERRY, J., dissents.