SCHOOLS
The local school board of a school district is authorized to adopt reasonable rules and regulations pertaining to and restricting the political activities of school administrators and teachers in school board elections. The ultimate legality of any such rule or regulation may only be determined based upon a strict review of the specific terms and conditions of such rule or regulation and a review of its application in any particular case. However, it is further the opinion of the Attorney General that such rule or regulation which is not reasonably connected to the preservation of the proper educational process and function, or which cannot be justified as being adopted to prevent activity which is actually or potentially disruptive to the educational process, would not be constitutionally valid under the free speech protections afforded by the First Amendment of the United States Constitution and Article II, Section 22 of the Oklahoma Constitution. The Attorney General has considered your request for an opinion wherein you ask, in effect, the following question: May a local board of education adopt rules and regulations restricting the political activities of a school administrator in school board elections? It is understood that your question is intended to pertain to the activities of school teachers, principals, and district superintendents. It is generally recognized that the governing boards of education of a school district have the power to enact and enforce reasonable rules and regulations for the convenient dispatch of its own business, and for the administration of the schools and the conduct of the affairs of the district. 78 C.J.S., Schools and School Districts, Section 121; 68 Am.Jur.2d, Schools, Section 53. Such authority in Oklahoma exists by Statute. Title 70 O.S. 5-117 [70-5-117] (1976), provides in pertinent part: "The board of education of each school district shall have power . . . to make rules and regulations, not inconsistent with the law or rules and regulations of the State Board of Education, governing the board and the school system of the district . . . and to maintain and operate a complete public school system of such character as the board of education shall deem best suited to the needs of the school districts . . . ." The Supreme Court of Oklahoma has held that under this provision school boards are empowered to adopt and enforce rules and regulations which are necessary to create and preserve a proper atmosphere for learning to take place. Independent School District No. 8 of Seiling v. Swanson, Okl., 553 P.2d 496
(1976). Such rule-making authority extends to the adoption of reasonable rules and regulations pertaining to the personal conduct of school personnel. As stated at 78 C.J.S., Schools and School Districts, Section 237: "A public school teacher, principal, or superintendent is subject to the supervision and control of the school board or governing body of the school in all activities connected with the business of the school." It is also well settled that such rule-making authority is not without limitations. Those limitations are generally that such rules and regulations must not conflict with any statutory or constitutional provision or right and, further, such rule or regulation must be reasonably connected to the proper purposes of the educational function of the school. 78 C.J.S., Schools and School Districts, Section 121; 68 Am.Jur.2d, Schools, Section 54; Swanson, supra. While it may be acknowledged that the individual political activities of a school administrator or teacher may properly fall within the local school board's authority and supervisory control, and while it may further be acknowledged that there exists no specific statutory right for school administrators or teachers to participate in school board elections, there are certain constitutional limitations upon the right of a school board to enact rules and regulations restricting an individual's political activity. Such general limitations may best be understood by briefly noting a limited number of the case holdings pertaining to this question. In a 1924 California case, Goldsmith v. Board of Education, 66 C.A. 157, 225 P. 783, it was held that a teacher's advocacy before public school pupils of the election of a particular candidate for public office constituted unprofessional conduct and warranted the suspension of the teacher. In this case, the suspended teacher had, during the course of a class which he taught, advocated the election of a certain individual seeking the office of superintendent of schools. The Court in this case upheld the teacher's suspension for this conduct, and in making reference to such conduct made the following statement: "It is to be observed that the advocacy before the scholars of a public school by a teacher of the election of a particular candidate for a public office the attempt thus to influence support for such candidate by the pupils and through them by their parents introduces into the school questions wholly foreign to its purpose and objects; that such conduct can have no other effect than to stir up strife among the students over a contest for a political office, and the result of this would inevitably be to disrupt the required discipline of a public school. Such conduct certainly is in contravention not only of the spirit of the laws governing the public school system, but of that essential policy according to which the public school system should be maintained in order that it may subserve in the highest degree of its purposes." The Goldsmith decision, supra, appears to be the only reported appellate decision concerning active in-class political campaigning conducted by a teacher. Although the decision in this case was rendered in 1924, the holding has not been overturned and would appear to be present and valid authority for the enactment of a rule or regulation restricting the in-class political activities of a school instructor or administrator. However, should the contemplated rule or regulation, as described in your question, encompass activity distinguishable from that presented in Goldsmith, supra, certain additional criteria and guidelines regarding the constitutionality of such rules and regulations should be noted. Individual expressions, utterances, and activities regarding political matters clearly fall within the purview of the free speech protections guaranteed by the First Amendment of the United States Constitution, as well as Article II, Section 22 of the Oklahoma Constitution. Refer generally, 16 Am.Jur.2d, Constitutional Law, Section 348. Broadrick v. Oklahoma, 413 U.S. 601, 37 L.Ed.2d 830, 93 S.Ct. 2908
(1973). It is well settled that public school employees may not constitutionally be compelled, as a condition of retaining their employment, to relinquish theFirst Amendment rights that they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools in which they work. Pickering v. Board of Education, 391 U.S. 563,20 L.Ed.2d 811, 88 S.Ct. 1731 (1968). As stated by the United States Supreme Court in the ease of Tinker v. Des Moines Community School District, 393 U.S. 503,21 L.Ed. 731, 89 S.Ct. 733 (1969): "First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate. This has been the unmistakable holding of this court for almost 50 years." While the First Amendment right of free speech has been care fully guarded by the courts, such rights are also recognized as not being absolute. Recent decisions in this area have held that school boards are authorized to place certain restrictions upon the exercise ofFirst Amendment rights. In the case of Pickering v. Board of Education, supra, a public school teacher's contract was non-renewed due to the conduct of the teacher in sending a letter to a local newspaper in connection with a proposed tax increase. The subject letter was quite critical of the way in which the local board of education and the district superintendent had handled past proposals to raise revenue for the schools. In this case, the Supreme Court held that the teacher was entitled to reinstatement and further that the teacher's dismissal violated his constitutional right of free speech. In recognizing some limitation upon the exercise of First Amendment rights, the Court held that where such comments did not interfere with the maintaining of discipline by immediate superiors or harmony among co-workers, and the teacher's employment relationships with such officials were not the kind of close working relationships for which it could be claimed that personal loyalty and confidence were necessary to their proper functioning, no grounds for dismissal could arise out of the critical statements which were made. The Court in this case further acknowledged that the subject statements in no way impeded the teacher's proper performance of his daily duties in the classroom or interfered with the regular operation of the schools generally. Political expressions and activities within the school system were similarly given constitutional protection by the United States Supreme Court in the case of Tinker v. Des Moines Community School District, supra, which case involved the wearing of arm bands symbolic of objections to the hostilities in Vietnam. In this case, the Court noted that the expressions would receive First Amendment protection under the Constitution where such expressions were not actually or potentially disruptive to the educational process and where there was no evidence that the authorities had reason to anticipate that such activity would substantially interfere with the work of the school or impinge upon the rights of other students. Referring to the same criteria, the United States District Court for the Western District of New York held in the case of James v. Board of Education, 385 F. Supp. 211 (1974), that: "Any limitation on the exercise of constitutional rights can be justified only by a conclusion, based upon reasonable inferences flowing from concrete facts and not abstractions, that the interests of discipline or sound education are materially and substantially jeopardized, whether the danger stems initially from the conduct of the students or teachers." A somewhat similar but differently stated criterion relative to the limitations which may be imposed upon the exercise of First Amendment rights appears in the case of Gray v. Union County Intermediate Education District, 520 F.2d 803 (9th Cir. 1975). This case involved the activities of a teacher who persistently voiced her views and opinions regarding the securing of an abortion for a student within the school system. In this case the Court found that the teacher's activities went beyond free speech. The Court in this case stated in its holding: "Although the First Amendment entitles an individual to voice controversial ideas, it does not entitle him to try and force his ideas and opinions upon others through harassment or other means." While the above-cited cases do not specifically pertain to the political activities of a school employee in the conduct of school board elections, all of these decisions do pertain to the protection afforded public employees in the exercise of First Amendment rights, such rights clearly including individual expressions and utterances regarding political questions and opinions. Accordingly, it would appear that the criteria and guidelines presently established in connection with this issue, above noted, may afford reasonable points for consideration in the adoption of any rule or regulation which would have the purpose of limiting the political activities of a school administrator. Based upon the authorities above noted, it may be concluded that a local school board may adopt reasonable rules and regulations restricting the political activities of school administrators in school board elections. However, it must be acknowledged that the legality of such a rule or regulation in any particular instance may only be determined on a case-by-case basis, taking into consideration the specific terms and conditions of such rule or regulation, as well as its actual application under any particular facts and circumstances. It is, therefore, the opinion of the Attorney General that your question be answered in the affirmative. The local school board of a school district is authorized to adopt reasonable rules and regulations pertaining to and restricting the political activities of school administrators and teachers in school board elections. The ultimate legality of any such rule or regulation may only be determined based upon a strict review of the specific terms and conditions of such rule or regulation and a review of its application in any particular case. However, it is further the opinion of the Attorney General that such a rule or regulation which is not reasonably connected to the preservation of the proper educational process and function, or which cannot be justified as being adopted to prevent activity which is actually or potentially disruptive to the educational process, would not be constitutionally valid under the free speech protections afforded by the First Amendment of the United States Constitution and Article II, Section 22
of the Oklahoma Constitution. (R. THOMAS LAY)