**Denise McINTIRE, individually and as next friend of Tammy Almond, a minor, et al., Plaintiffs,**

**v.**

**BETHEL SCHOOL, INDEPENDENT SCHOOL DISTRICT NO. 3; Board of Directors of Bethel School, Independent School District No. 3; Sharon Stewart, individually and in her capacity as President of Bethel School Board; James Harrod, individually and as Su-**

perintendent of Bethel School Board; Lyle Head, individually and as Vice-President of Bethel School Board; Larry Molder, individually and as Elected Clerk of Bethel School Board; Jimmie Smith, individually and as Member of the Bethel School Board; K.K. Obhrai, individually and as Bethel School Board Member, Defendants.

No. CIV–92–433–R.

United States District Court,
W.D. Oklahoma.

June 19, 1992.

**1418**

Mark Henricksen, El Reno, Okl., Michael C. Salem, Norman, Okl., for plaintiffs.

Laurie W. Jones, Sherry L. Smith, Fenton Fenton Smith Reneau & Moon, Tom L. King, Jeff R. Beeler, Sally Gilbert, King Roberts & Beeler, Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION AND ORDER

DAVID L. RUSSELL, District Judge.

Before the Court is Plaintiffs' application for a temporary injunction enjoining Defendants in their official and individual capacities and their officers, successors, agents, servants, employees and attorneys and persons acting in concert with them from prohibiting Plaintiffs and other students and faculty members of the school district from wearing to school and to school activities t-shirts bearing the words "[t]he best of the night's adventures are reserved for people with nothing planned." Also before the Court is Defendants' motion to dismiss Plaintiffs' Amended Complaint for failure to state a claim on which relief can be granted pursuant to F.R.Civ.P. 12(b)(6).

Plaintiffs in their Amended Complaint assert claims for declaratory and injunctive relief and for damages under 42 U.S.C. § 1983 for Defendants' alleged deprivation of Plaintiffs' rights under the First Amendment to the United States Constitution and a pendent claim for declaratory and injunctive relief based upon the Oklahoma Constitution, Art. 2, § 22. Plaintiffs allege that Defendant James Harrod, the superintendent of the Bethel School Board, ordered the suspension of students and threatened to suspend students from school who wore sweatshirts bearing the above-quoted statement and threatened that members of the boys' and girls' basketball teams that they would be "kicked off" such teams if they wore the shirts. Amended Complaint at ¶¶ III—VIII. Plaintiffs also allege that parents of some of the students were threatened with arrest and that the Sheriff's Department and Highway Patrol were called to arrest parents. *Id.* at ¶ IX.

## DEFENDANTS' MOTION TO DISMISS

As grounds for their motion to dismiss, Defendants assert that because Bethel High School, at least during school hours when classes are in session, is not a public forum, the district can limit student expression in any reasonable way, citing *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); that school policy prohibiting the wearing of apparel which advertises alcoholic beverages and its enforcement is reasonable in light of the school district's educational mission and state law, specifically Okla.Stat. tit. 70, § 11–103; and that the slogan on the t-shirt is not protected speech because the students have purportedly acknowledged that the phrase is a parody on a liquor ad, the speech is more closely akin to commercial speech, and the speech is so far removed from the "exposition of ideas," *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942), as to lack all protection. Defendants go so far as to argue that "[t]he transaction proposed in this advertisement, in this forum, is itself illegal, and not worthy of First Amendment protection." Brief in Support of Motion to Dismiss at p. 8. Secondly, Defendants argue that no substantive due process rights are implicated in this case, that the parents have no procedural due process rights related to the students' suspensions and that any claims for alleged deprivations of procedural due process are premature inasmuch as state law provides for a right to appeal a suspension

to the Board of Education, Okla.Stat. tit. 70, § 24–101, and "hearings are currently being scheduled." Finally, Defendants argue that in their individual capacities they have qualified immunity from liability for damages. In making this argument Defendants point out that that claims against them in their official capacities are actually claims against the school district and that "the individual board members have taken absolutely no action ... [against the] Plaintiffs ... except that they have adopted and promulgated the dress code policy."

Defendants' motion to dismiss the student Plaintiffs' claims for alleged deprivations of First Amendment rights is denied. The existence of genuine issue of material fact as to whether the t-shirts do in fact or may reasonably be understood to advertise an alcoholic beverage, together with the Court's conclusion that the speech involved is presumptively protected under the First Amendment, *see Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498, 1507 (1957) ("All ideas having even the slightest social importance ... have the full protection of the guaranties [of the First Amendment] unless excludable because they encroach upon the limited area of more important interests."); *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942); *Association of Community Organizations for Reform Now v. Municipality of Golden, Colo.*, 744 F.2d 739, 746 (10th Cir.1984) (statutes or regulations which restrict or infringe upon exercise of First Amendment rights are presumptively invalid; proponent of law or regulation bears burden of establishing its constitutionality), precludes dismissal of the student Plaintiffs' First Amendment claims. The Court cannot say on the basis of the pleadings that Plaintiffs can prove no set of facts entitling them to relief on their First Amendment-based § 1983 claims, regardless of which standard of review applies.

The Court agrees with Defendants, and Plaintiffs do not dispute, that no substantive due process rights are implicated by Plaintiffs' allegations. The Court also agrees with Defendants, and Plaintiffs do not dispute, that the parent Plaintiffs, in their individual capacities and not as next friends of the minor Plaintiffs, have no procedural due process rights as a result of the suspensions of their children or other students. Plaintiff parents do not allege that they were actually arrested. Indeed, the Court does not read Plaintiffs' Amended Complaint as even attempting to state a claim for deprivation of the parents' procedural due process rights. Defendants' motion to dismiss these claims, to the extent they are even asserted, is granted pursuant to F.R.Civ.P. 12(b)(6). Plaintiffs' Amended Complaint does not, in the Court's view, even purport to state claims under 42 U.S.C. § 1983 for deprivation of the minor Plaintiff's procedural due process rights. Thus, the Court need not address Defendants' argument that such claims are premature.

■ Because the Court has heard evidence on the application for a preliminary injunction and has before it matters outside the pleadings the Court will treat Defendants' motion to dismiss on qualified immunity grounds as a motion for summary judgment. *See M.S. News Co. v. Casado*, 721 F.2d 1281, 1285 n. 3 (10th Cir.1983) (proper to treat motion to dismiss as one for summary judgment in such circumstances).

■ When a defendant raises the defense of qualified immunity in a motion for summary judgment, the plaintiff or plaintiffs have the burden of coming forward with proof of facts sufficient to show that the law the defendant is alleged to have violated was clearly established at the time of the violation and that the defendant's conduct violated the law. *See Dixon v. Richer*, 922 F.2d 1456, 1460 (10th Cir.1991); *Powell v. Mikulecky*, 891 F.2d 1454, 1457 (10th Cir.1989); *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 646 (10th Cir.1988). The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640,

107 S.Ct. 3034, 3039, 97 L.Ed.2d 523, 531 (1987).

The law regarding students' First Amendment right, that is, what student speech or expressive conduct the First Amendment requires schools and school officials to tolerate, *Tinker v. Des Moines Community School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), and the extent to which and under what conditions schools and school officials may, consistent with the First Amendment, regulate student speech which may reasonably be viewed as school-sponsored or bearing the school's imprimatur, *see Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988); *Bethel School District No. 403 v. Fraser*, 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986), was clearly established at the time Defendant James Harrod directed the student Plaintiffs' suspension and the general prohibition on the wearing of the t-shirts in question. A reasonable official in his position would understand that absent a factual basis for a reasonable forecast that the t-shirt message would substantially disrupt or materially interfere with the work or discipline of the school or that it would infringe upon the rights of other students, *see Tinker*, 393 U.S. at 509 & 512–14, 89 S.Ct. at 738 & 739–41, 21 L.Ed.2d at 733 & 741–42, his conduct would violate the law. Defendants have offered no credible or competent evidence of facts which might reasonably have led Defendant Harrod to forecast that the t-shirt message would be perceived as an advertisement for liquor and would result in substantial disruption or material interference with the work or discipline of the school or that it would infringe upon the rights of other students. Moreover, Plaintiffs have offered evidence that the shirts, when previously worn by a number of students on a number of occasions, had caused no disruption or stir whatsoever.

■ Defendants contend that the *Hazelwood* and *Fraser* standard rather than the *Tinker* standard is applicable. But even applying that standard, Defendant Harrod is not entitled to summary judgment on qualified immunity grounds. Plaintiffs have offered substantial evidence that the t-shirts were not school-sponsored, and did not bear and could not reasonably be perceived as bearing the school's imprimatur, rendering that standard inapplicable. Moreover, Plaintiffs have proffered substantial evidence that the message on the t-shirt does not advertise an alcoholic beverage—that reasonable persons or even reasonable students at Bethel High School viewing the t-shirt message would not perceive it as an advertisement for alcohol. *See infra* at pp. 1421–1424 & 1425–1426. Thus, even if the *Hazelwood* and *Fraser* standard were applicable and the dress code prohibition on wearing apparel which advertises alcohol is reasonably related to the pedagogical concerns asserted by Defendants and those concerns are legitimate, Defendant Harrod is not entitled to summary judgment on qualified immunity because a genuine issue of material fact exists as to whether the t-shirt message advertises an alcoholic beverage.

■ The only evidence of any conduct of any of the remaining Defendants relating to the alleged deprivation of Plaintiffs' First Amendment rights is that the Bethel Board of Education approved the dress code policy pursuant to which Defendant Harrod acted.

The dress code prohibition on wearing clothing which bears a message advertising alcoholic beverages is not limited to clothing which could reasonably be viewed as bearing the imprimatur of the school. The law was clearly established at the time that the dress code prohibition was made effective for the 1991–92 school year that a factual basis for reasoned forecast of substantial disruption or material interference with school activities, *Tinker*, 393 U.S. at 514, 89 S.Ct. at 740, 21 L.Ed.2d at 742, is required to prohibit or punish students' speech or expressive conduct consistent with the First Amendment. The Court concludes as a matter of law that reasonable members of a board of education could believe that the dress code in question did not violate students' First Amendment rights. Reasonable school officials could

forecast that the wearing of clothing bearing a message advertising an alcoholic beverage would substantially disrupt or materially interfere with the teaching of the adverse effects of alcohol and that its consumption by minors is illegal and/or would substantially disrupt or materially interfere with school discipline. Defendants presented expert testimony on the susceptibility of youth to alcoholic beverage advertisements and other evidence of the incidence of use of alcohol by junior high students in Bethel Jr. High School based on surveys done in 1986 through 1988 and that students did sometimes come to school drunk. These facts could reasonably lead Defendant "school board" members [1] to forecast that allowing students to wear apparel advertising alcoholic beverages would encourage consumption of alcohol before or during school and discussion of same which would substantially disrupt or interfere with classwork and the discipline of the school. Plaintiffs presented no evidence showing that it was foreseeable to the Defendant school board members that the dress code provision would be applied to clothing such as the t-shirts bearing a message which does not advertise an alcoholic beverage or that Defendant school board members approved of, directed or ratified Defendant Harrod's application of the dress code provision to the t-shirts in question. All of the Defendant school board members with the exception of Superintendent James Harrod, that is, Defendants Sharon Stewart, Lyle Head, Larry Molder, Jimmie Smith and K.K. Obrai in their individual capacities, are entitled to qualified immunity as a matter of law on Plaintiffs' § 1983 claims for damages for the alleged deprivation of their First Amendment rights.

### PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

On May 6, 1992, an evidentiary hearing on the motion for a preliminary injunction was held. All parties presented evidence and oral argument. The parties have exhaustively briefed the issues raised by the motion for a preliminary injunction. The Court is prepared to rule thereon.

Plaintiffs have the burden, upon their motion for a preliminary injunction of demonstrating 1) a substantial likelihood that they will eventually prevail on the merits; 2) that plaintiffs will suffer irreparable injury unless the injunction issues; 3) that the threatened injury to plaintiffs outweighs whatever damage the proposed injunction may cause the defendants; and 4) that the injunction, if issued, would not be adverse to the public interest. *See, e.g., Longstreth v. Maynard,* 961 F.2d 895, 902 (10th Cir.1992) (quoting *Lundgrin v. Claytor,* 619 F.2d 61, 63 (10th Cir.1980)). Of course, if the second, third and fourth factors are demonstrated, Plaintiffs need only raise "questions so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry," rather than a substantial likelihood of prevailing upon the merits. *Id.* at p. 903 (quoting *Lundgrin,* 619 F.2d at 63). *See also Koerpel v. Heckler,* 797 F.2d 858, 867 (10th Cir.1986).

The first factor must be evaluated by reference to the proof required for Plaintiffs to prevail on their claims under 42 U.S.C. § 1983. To prevail on the merits of their § 1983 claims against the individual Defendants, Plaintiffs will be required to prove that the Defendants did some act or acts which operated to deprive the Plaintiffs of their federal constitutional rights; that the Defendants were, at the time they committed such acts, acting under color of the state law of Oklahoma; and that the Defendants' acts were the proximate cause of injuries or damages sustained by the Plaintiffs. *See Meade v. Grubbs,* 841 F.2d 1512, 1526 (10th Cir.1988); *Trujillo v. Goodman,* 825 F.2d 1453, 1456–57 (10th Cir.1987). In order to prevail on any of their § 1983 claims for relief against Defendant School District, Plaintiffs must prove the existence of a school district poli-

---

1. The Court presumes that Defendant Board of Directors of Bethel Independent School District No. 3 and the Defendants named in their official capacities as Bethel School Board members and officers are in fact the Board of Education of Bethel Independent School District No. 3 and its members.

cy promulgated by its final policy maker or makers which constituted the moving force behind or caused or induced the alleged constitutional deprivation. *See, e.g., City of St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

On March 3, 1992, at the direction of Defendant James Harrod, Superintendent of the Bethel School Board, approximately twenty-six high school students of Bethel High School, including some of the Plaintiffs, were suspended from school for wearing and refusing to remove certain t-shirts which bear the words "The best of the night's adventures are reserved for people with nothing planned" vertically on the back of them.

### Summary Of Testimony

Jana Corso, one of the minor Plaintiffs in this action, designed the t-shirt in November of 1991. She testified that the shirt was designed to portray on the back a typical teenager in 1991—a figure wearing "Guess" jeans, "Adidas" shoes and a "Raiders" baseball cap. She testified that she did not recall where the statement on the back of the shirt came from but stated that she collects "sayings," writing them down and hanging them on the walls of her room. She testified that to her the words "[t]he best of the night's adventures are reserved for people with nothing planned" conveyed the message "be spontaneous, have fun; if you plan things, they often turn out wrong." She further testified that she had six of the shirts printed and that she wore her t-shirt to school approximately 10 times between late November of 1991 and February of 1992 and wore it over her cheerleading uniform before and at half-time at basketball games. She named other students who wore the shirts during that same period and testified that the original six t-shirts which were printed were worn often during that time frame. She testified that the wearing of the shirt during this period never caused a stir or disturbance.

The principal of Bethel High School, Charles Franklin, corroborated Jana Corso's testimony that students wore the shirts in question to school from November of 1991 through February of 1992. During this time he took no action against the students, while admitting that enforcement of the school dress code is his duty. He stated that he never knew during that time frame that the slogan on the shirts was from a liquor ad. He stated that in his opinion the shirts don't violate the dress code. He also testified that he was not aware of any disturbance or disruption at school or at an extra-curricular activity resulting from the wearing of these t-shirts.

Principal Franklin testified that on March 3, 1992, he was directed by Superintendent James Harrod to suspend from school any students who wore the shirts. They were to be sent home and given unexcused absences. He stated that Harrod instructed him to tell the teachers to give "pop quizzes" for which students not present would receive zeroes.

He testified that the punishment provisions for violations of the school dress code provide that upon the first offense, the student shall be prohibited from wearing shorts to school for one week; upon the second offense, the student is prohibited from wearing shorts to school for the remainder of the year; and upon the third offense, the student is subject to suspension or expulsion. On cross-examination he admitted that failure of students to remove the shirts when asked was a violation of written policy, which is grounds for suspension. He further testified that the Superintendent makes school policy and has the "final say" on matters of policy and that he, as principal, must enforce that policy. He also admitted that Mr. Harrod's objections to the shirt were valid.

Defendant James Harrod, Superintendent of Bethel Schools, testified that Mrs. Gilpatrick, Jana Corso's mother, told him in November that the words on the t-shirt came from a liquor ad. He also testified that in February of 1992 he inquired as to where the students got the statement on the back of the t-shirt and was told by

Michelle Barrett that she was told when she purchased the shirt that it came from a liquor ad. Harrod stated that it was his understanding that the students knew the phrase came from a liquor ad and that he believes that the shirt does promote the sale of liquor because the students knew where the phrase came from. He later testified that before the shirts were printed, he met with the printer Sheila Green and that she mentioned that the saying for the shirts was from a liquor ad and he objected to the content of the saying at that time.

Defendant James Harrod testified that to his knowledge the first time the shirts were worn to school was on March 3, 1992, which was when the students were suspended at his direction for wearing the shirts. He denied that he directed the principal to direct teachers to give "pop quizzes." He further testified that if the saying on the shirts did not appear in a liquor ad, the t-shirts would not violate the school dress code.

The only disturbance or disruption at school to which Superintendent Harrod testified was that which occurred as a result of the protest of his ban of the shirts—the presence of media and attorneys at the school on March 3, 1992.

Bethel Jr. High School Principal Gary Cartright was called as a witness by Defendants. He testified that two junior high students were suspended from school on March 3, 1992 for wearing the shirts. He stated that the only knowledge he had as to whether or not junior high students knew that the words on the shirt came from a Bacardi rum ad was that the students eventually knew this because he announced it to the students. He testified that allowing the students to wear the shirts in question looks like the school is allowing the students to promote alcohol and/or drugs, which can be disruptive, and gives the appearance that the schools support these activities. He admitted, however, that there are many possible interpretations of the words on the shirt that have nothing to do with the sale or consumption of alcohol,

even if one knows the phrase came from a liquor ad.

Mr. Cartright testified that there was no evidence of an increase in drinking among junior high students since March, but testified that in early April a junior high student was found drunk in the gym. He testified that the bottle she had been drinking from was found and it was a Bacardi Black bottle. He testified that he thought the student was aware of the t-shirt before this incident because her mother was involved in and supportive of the shirts. He admitted that he had no information which suggested that the student got drunk because of the t-shirts.

Janet Gilpatrick, Jana Corso's mother, was called as a rebuttal witness by Plaintiffs. She testified that to her knowledge, she never discussed the t-shirts with James Harrod. She stated that she was first made aware on March 3, 1992 that the saying on the shirts came from a liquor ad.

A number of expert witnesses were called by Plaintiffs and by Defendants. Robert E. Hammack, an advertising expert, testified that the Bacardi Black ad campaign in which the headline which was borrowed for the shirts appeared also used several other headlines and that the most recent ad he could located using this particular headline appeared in June of 1991. He explained that headlines are changed frequently and that the same headline can be used verbatim for different products. He testified that in his opinion the t-shirt is not an advertisement for Bacardi Black because it does not bear Bacardi Black's registered slogan "The taste of the night," and bears no reference to the product. He further testified to the number of television commercials the average person is exposed to during his/her lifetime, and the number of advertisements a person is exposed to per day. He testified that the average person has been exposed to over one-half million advertisements since June of 1991, when the last ad using the headline which appears on the t-shirts was run. On cross examination he testified that the advertising campaign which utilized the headline on the shirts was very limited so that it would

be too great a leap to conclude that people seeing the shirts would know that the words thereon come from a liquor ad. He admitted that the headline as used on the shirts could but did not necessarily become a liquor advertisement if students were told that the phrase came from a liquor ad. Charles Edgley, a professor of social psychology including advertising, and the author of a chapter of a book on images in advertising, also testified for Plaintiffs. He opined that the t-shirt in question "absolutely does not advertise Bacardi Black." He testified that "recency" is a vitally important concept in advertising and its effectiveness and that the fact that Bacardi used several different headlines diluted the effectiveness of any one headline and its association with Bacardi Black.

Frank Easton testified as an advertising expert for Defendants. He testified that one cannot isolate one ad from the campaign; that he didn't see the message of the campaign as one of spontaneity but rather as the message "Don't plan anything; all you need for a good time is Bacardi Black." He testified that if the students know that the phrase on the t-shirts came from a liquor ad, then the t-shirt is an advertisement for liquor. On cross examination he admitted that the headline could be used to sell a host of products besides alcohol and that the name of the product and brand name must be in an advertisement. Otherwise, he said, a phrase such as the one in question doesn't apply to anything. He also admitted that the facts that the advertisement had been discontinued and that Bacardi used multiple headlines diluted the association between the phrase in question and Bacardi Black.

Dr. Belinda Biscoe also testified on Defendants' behalf. She explained the federally-funded Drug Free Schools Program and the message of "no use" of alcohol which school districts in this program are required to convey. She testified that the alcohol industry targets youth, among others, and that it often employs "hidden messages" because they appeal to teenagers. She testified that studies reveal that alcohol advertising is designed to promote an attitude as well as alcohol consumption. Dr. Biscoe testified that the impact of alcohol on society is demonstrated by the 100,000 people who die each year as a direct result of alcohol. In her opinion, the Superintendent's decision was an educationally sound and reasonable one. She testified that the Superintendent, because of what he knew and what the students knew at the time he "banned" the shirts, would have been negligent if he had not "banned" them.

*Likelihood of Success on the Merits*

The Court finds that Plaintiffs have met their burden of demonstrating a substantial likelihood of success on the merits of their § 1983 claims for deprivation of their First Amendment rights. The phrase "The best of the night's adventures are reserved for people with nothing planned" which is displayed on the back of the t-shirts worn by the students and which they desire to wear, because it conveys an idea, is speech presumptively protected by the First Amendment. *See Roth v. United States,* 354 U.S. 476, 484, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498, 1507 (1957) ("All ideas having even the slightest redeeming social importance—unorthodox ideas, controversial ideas, even ideas hateful to the prevailing climate of opinion—have the full protection of the guaranties [of the First Amendment], unless excludable because they encroach upon the limited are of more important interests."); *Chaplinky v. State of New Hampshire,* 315 U.S. 568, 571–72, 62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942) (right of free speech is not absolute and does not extend to the lewd and obscene, the profane, the libelous and insulting or "fighting" words which tend to incite an immediate breach of the peace; but right extends to utterances which are "an essential part of any exposition of ideas, communication of information or opinion"); *Jannetta v. Cole,* 493 F.2d 1334, 1337 n. 5 (4th Cir.1974) ("The First Amendment is not limited in its protection to issues of great social and political impact....") Because the enforcement of the Bethel Public School Dress Code restricts the exercise of

the students' First Amendment rights, Defendants bear the burden of establishing that the t-shirts are proscribed by the dress code and that the dress code as applied is constitutional. *Cf. New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) (any system of prior restraint of expression bears a heavy presumption against its constitutional validity; its proponent has the heavy burden of showing justification for the imposition of such a restraint); *Association of Community Organizations for Reform Now v. Municipality of Golden, Colo.,* 744 F.2d 739, 746 (10th Cir.1984) ("[W]hen a law infringes on the exercise of First Amendment rights, its proponent bears the burden of establishing its constitutionality").

The Bethel Public School Dress Code for the 1991–1992 school year, which is included in the Student Handbook for that school year (Plaintiffs' Exh. "2"), which Defendants contend the t-shirts violated, provides in pertinent part as follows:

> Students of Bethel Public Schools are expected to dress and be groomed so that credit will accrue to the school and the student body. Any public display of nudity or any "flare" [sic] in grooming or dress which is offensive to the group and thus interferes with the education of the majority will be corrected immediately. Any act or condition that is disruptive to the learning process of the majority of students will not be tolerated. Clothing which bears any message which is considered to be obscene; disrespectful of country; school or religion; or advertises alcoholic beverages shall be deemed inappropriate.

> Bethel Public School Student Handbook (Plaintiffs' Exh. "2") at p. 31.

The school handbook states that "[t]he policies and information contained herein have been reviewed and approved by the Bethel Board of Education on August 15, 1991." *Id.* at p. ii.

The Court finds that Defendants have failed to prove by a preponderance of the evidence that the message on the t-shirts advertises an alcoholic beverage. Defendants failed to prove by a preponderance of the evidence that a reasonable person or even a reasonable student at Bethel High School, viewing the statement on the t-shirts, would understand the message as an advertisement for liquor or that the association between the statement and the Bacardi Black advertisement is so strong such that the statement or message had acquired "secondary meaning" or something akin thereto, so that a reasonable person or student viewing the message on the t-shirt would perceive it as advertising Bacardi Black. Defendants also failed to prove that the t-shirt message was in fact perceived by students at Bethel High School as an advertisement for an alcoholic beverage, at least prior to the suspensions on March 3, 1992. There was no evidence that the student who designed the shirt intended any association between the statement on the t-shirt and Bacardi liquor or even knew that the statement came from a liquor advertisement. The only evidence that some students who wore the shirts knew or might have known prior to February 20, 1992 that the message on the shirts came from a liquor advertisement was equivocal at best. There was no evidence that any of the other students knew as of March 3, 1992, that the message on the shirts was derived from a liquor ad. In the absence of evidence that the Bethel High School students knew the derivation of the statement on the t-shirts, associated the statement with Bacardi Black or an alcoholic beverage, or actually perceived or understood the message on the t-shirts as advertising, i.e. calling attention to, an alcoholic beverage, the Court is persuaded by the testimony of Robert E. (Bob) Hammack and Charles Edgeling, Plaintiffs' experts, that the t-shirt message does not constitute an advertisement for Bacardi Black, that is, that a reasonable person would not perceive the message as such because the message is not accompanied by any reference to Bacardi Black or to any alcoholic beverage or even by a drawing of a bottle; the message is not accompanied by Bacardi Black's registered slogan; the ad campaign employing the "headline" used on the t-shirts is not of sufficient recency for any association between the statement and Ba-

cardi Black to have endured; and the ad campaign utilizing the "headline" later used on the t-shirts was limited and employed other headlines, see Plaintiffs' Exhibits 29–33. Defendants have advanced no grounds for suspending students who wore the shirt or for prohibiting their wearing the shirts in the future other than that the shirts violate the school dress code because they bear a message which advertises an alcoholic beverage.

■ The Court concludes that the dress code provision proscribing the wearing of apparel bearing a message which advertises alcoholic beverages is not facially unconstitutional. See supra at pp. 1420–1421. However, Defendants have failed to meet their burden of proving that the policy as applied to the t-shirts in question does not unconstitutionally infringe the students' First Amendment rights. Defendants offered no proof of any facts which might reasonably have led them to forecast that the t-shirt message would be perceived as an advertisement for liquor and would result in "substantial disruption or material interference" with the work or discipline of the school or that it would infringe upon the rights of other students. Tinker v. Des Moines Community School District, 393 U.S. 503, 509, 512–14, 89 S.Ct. 733, 738, 739–41, 21 L.Ed.2d 731, 733, 741–42 (1969).

The Court finds that while the t-shirts do say "Jrs. 91–92" on the front and "Jrs." on the back, they bear no reference to Bethel High School and were not adopted as official Bethel High School junior class t-shirts. Indeed, the junior class voted not to have a junior class t-shirt. The Court finds that the shirts do not, when worn to school during regular school hours, bear the imprimatur of the school or its junior class, and that they could not reasonably be viewed, when worn under such circum-

stances as bearing the imprimatur of the school or as school-sponsored shirts.[2] Accordingly, the Court concludes that the Hazelwood School District v. Kuhlmeier, 484 U.S. 260, 270–73, 108 S.Ct. 562, 569–71, 98 L.Ed.2d 592, 605–07 (1988) and Bethel School District No. 403 v. Fraser, 478 U.S. 675, 685–86, 106 S.Ct. 3159, 3165–66, 92 L.Ed.2d 549, 560 (1986) are inapplicable. Those cases hold that educators may, consistent with the First Amendment, exercise control over or regulate the style and content of student speech in school-sponsored expressive activities as long as their actions are reasonably related to legitimate pedagogical concerns. Hazelwood, 484 U.S. at 273, 108 S.Ct. at 571, 98 L.Ed.2d at 606. See Fraser, 478 U.S. at 685, 106 S.Ct. at 3165, 92 L.Ed.2d at 560 (school officials may sanction student for using vulgar and lewd speech at school sponsored assembly as speech which would undermine the school's basic educational mission). The Supreme Court's opinion in Fraser is oblique at best and certainly less than clear. To the extent that Fraser stands for the broader proposition that school officials may prohibit and punish any manner or content of speech regardless of whether the speech may reasonably be viewed as school-sponsored, which is inconsistent with the school's educational mission or the fundamental values of public school education or which intrudes on the rights of others, Fraser is of no aid to Defendants because the only grounds advanced by Defendants for prohibiting the wearing of the t-shirts bearing the words in question and for sanctioning those students who wore the shirts is that the words on the shirts are inconsistent with the school's mission of teaching students about the effects of alcoholic beverages, see Response and Objection of Defendants to Plaintiffs' Application for Pre-

**2.** The only evidence which Plaintiffs presented concerning any prohibition of the wearing of the t-shirts at "school activities," which the Court presumes may include extra-curricular activities which may include both those which are school-sponsored and those which are not, are certain affidavits of the Plaintiffs. Plaintiffs have failed to address whether such activities are school-sponsored or not or are public fora. The Court finds that Plaintiffs have failed to

show their likelihood of success on the merits with respect to any § 1983 claims for damages or for declaratory or injunctive relief based on alleged actions taken or threatened with respect to the wearing of the t-shirts to "school activities." The Court also finds that Plaintiffs have failed to show that they will suffer irreparable injury if the injunction does not issue with respect to the wearing of the t-shirts in question to such "school activities."

liminary Injunction at p. 10, citing Okla. Stat. tit. 70, § 11–103, and that alcohol consumption by minors is illegal. *See id.* The Court has found that the message on the t-shirt does not advertise an alcoholic beverage and was not and cannot reasonably be understood as an advertisement of an alcoholic beverage. The actions of Defendant Harrod in prohibiting the wearing of the shirts and in suspending students were not reasonably related to the expressed pedagogical concern of teaching students about the effects of alcoholic beverages and the illegality of consumption of them by minors. No evidence was presented that the message on the t-shirts was offensive to and intruded upon the rights of other students.

■■■■■ The Court concludes that forum analysis, *see, e.g., Perry Education Association v. Perry Local Educators' Association,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) is inappropriate to the issues raised by this motion for a preliminary injunction. There is no evidence that the Bethel High School during school hours is a public forum. *See id.,* 460 U.S. at 45–47, 103 S.Ct. at 954–56, 74 L.Ed.2d at 804–06. *See also Hazelwood School District v. Kuhlmeier,* 484 U.S. at 267–70, 108 S.Ct. at 567–69, 98 L.Ed.2d at 602–05 (when a public school may become or be deemed a public forum). When a public school is not a public forum, then either *Hazelwood* and/or *Fraser* or *Tinker* provide the standard of review under the First Amendment of school officials' actions related to the regulation of students' speech or expressive activities. *See Hazelwood School District v. Kuhlmeier,* 484 U.S. at 267–70, 108 S.Ct. at 567–69, 98 L.Ed.2d at 603–05. *Accord Miles v. Denver Public Schools,* 944 F.2d 773, 776 (10th Cir.1991). If a public school is not a public forum, the proper inquiry for First Amendment purposes then focuses on whether the students' speech or expressive activity is school-sponsored speech or speech or expression which might reasonably be perceived to bear the imprimatur of the school. *Id.* If the speech is school-sponsored, the *Hazelwood* and *Fraser* standard applies. *See Hazelwood,* 484 U.S. at 270–273, 108 S.Ct. at

569–71, 98 L.Ed.2d at 605–06; *Miles v. Denver Public Schools,* 944 F.2d at 776. If the speech or expressive activity is not school-sponsored or that which might reasonably be perceived to bear the school's imprimatur, *Tinker* provides the standard for determining whether the First Amendment requires the school to tolerate the particular student speech or expressive activity. *Id.*

Because the Court concludes that the message on the t-shirts is speech protected by the First Amendment and Defendants have failed to prove that the speech is an advertisement for an alcoholic beverage and that the prohibition and punishment of such speech is rationally related to a legitimate pedagogical concern, or that the speech is inconsistent with the school's educational mission, or any basis for a reasoned forecast that the t-shirt message would be perceived as an advertisement for an alcoholic beverage and would substantially interfere with or disrupt the work or discipline of the school, or infringe on the rights of other students, Plaintiffs have made a prima facie showing of a deprivation of their First Amendment rights.

Defendants assert that their actions were taken pursuant to state law, specifically Okla.Stat. tit. 70, § 11–103. *See* Response and Objection of Defendants to Plaintiffs' Application for Preliminary Injunction at p. 10. Moreover, local boards of education such as the Bethel School Board, are given the authority to make rules and regulations, not inconsistent with those of the State Board of Education, governing the school system of the district, by state law. *See* Okla.Stat. tit. 70, § 5–117. As the Oklahoma Supreme Court has observed, "[t]here is no doubt that the rule making power of local school boards includes the area of student conduct" because state law, Okla.Stat. tit. 70, § 24–101, provides that student compliance with rules may be enforced through suspension from school. *Independent School District No. 8 of Seiling v. Swanson,* 553 P.2d 496, 501 (Okla.1976). The requirement that Defendants' actions were taken under color of state law is met.

█ Plaintiffs have proved by a preponderance of the evidence that those students who were suspended from school have been damaged or injured as a result of Defendant Harrod's actions. The loss of First Amendment rights, even for minimal periods of time, constitutes irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547, 565 (1976). Plaintiffs presented evidence that those who were suspended from school were given unexcused absences and received "zeroes" for "pop quizzes" and tests given while they were suspended which they were not allowed to make up. Plaintiff Jana Corso testified that this affected or would affect at least one of her grades for the six-week period.

█ Defendants admit that Defendant James Harrod's actions were taken pursuant to a policy—the Bethel Public School Dress Code, incorporated in the Student Handbook for the 1991–1992 school year. It is undisputed that this policy was approved by the Bethel School Board. *See* Plaintiffs' Exhibit "2" at p. ii. Under Oklahoma law, the board of education of the school district is the final policymaker in the area of student conduct, such as dress and speech, not otherwise prescribed by the State Board of Education. *See* Okla.Stat. tit. 70, §§ 5–105, 5–106, 5–117 A2 & 3 and 24–101; *Independent School District No. 8 of Seiling v. Swanson,* 553 P.2d at 501. However, as stated above, the policy in question is not facially unconstitutional and there is no evidence that the Bethel Board of Education or "school board" approved of, directed or ratified Defendant Harrod's interpretation or application of the dress code provision to the t-shirts. Accordingly, Plaintiffs have failed to demonstrate a substantial likelihood that they will prevail on the merits of their § 1983 claims for damages or permanent injunctive relief against either Defendant Independent School District No. 3 or Defendant school board members in their official capacities. *See City of St. Louis v. Praprotnik,* 485 U.S. at 128, 108 S.Ct. at 926; 99 L.Ed.2d at 121.

Based upon the foregoing findings of fact and conclusions of law, the Court finds that there is a substantial likelihood that the Plaintiffs or at least some of the Plaintiffs will prevail on the merits of their § 1983 claims either for damages or for permanent injunctive relief based upon deprivation of their First Amendment rights against Defendant James Harrod, in his individual capacity and in his official capacity as Superintendent of the Bethel School Board. Based upon the foregoing the Court also finds that Plaintiffs have failed to establish a substantial likelihood that they will ultimately prevail on their First Amendment-based § 1983 claims for injunctive relief or damages against the remaining Defendants.

### *Irreparable Injury*

At the time Plaintiffs filed their application for a temporary injunction, some of the Plaintiffs' First Amendment rights had already been infringed because they were actually prevented from wearing at school the t-shirts bearing the message at issue. There is no evidence that the Superintendent does not now consider the message on the t-shirts an advertisement for an alcoholic beverage and a violation of the dress code for which suspension may be imposed as a sanction. Moreover, it may reasonably be inferred that the Bethel High School principal will enforce the dress code in the future in accordance with the Superintendent Harrod's view that the message on the t-shirts advertises liquor and that the shirts violate the dress code. Therefore, the Court finds that the Plaintiff students' First Amendment rights are either being threatened or impaired. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547, 565 (1976), *citing New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). *Accord Kitty's East v. United States,* 905 F.2d 1367, 1371–72 (10th Cir.1990). The Court finds that the movants will suffer irreparable injury unless the injunction issues.

*Balance of Harms*

Plaintiffs have established that no disruption or disturbance in the school occurred as a result of students wearing the t-shirts in question, at least until March 3, 1992. The Court finds that the disruption which occurred on March 3, 1992 was the result of the superintendent's ban of the shirts and the suspension of students, rather than the result of the mere wearing of the message-laden shirts. It is true as Defendants suggest that "[t]he t-shirt has garnered considerable notoriety since the filing of this lawsuit." Response and Objection of Defendants to Plaintiffs' Application for Preliminary Injunction at p. 12. In considering the likelihood of disruption in school and whether, as Defendants suggest, injunctive relief forcing Defendants to permit the wearing of the shirts would undermine the school's efforts toward teaching about the harmful effects of alcohol and that consumption of alcohol by minors is illegal, the Court must consider the fact that due to the suspensions and reasons given therefor, the Junior High School Principal's announcement, this case and the evidentiary hearing on this motion, many if not all of the students in the Bethel High School and School District know or will know that the words on the t-shirt were used in a Bacardi Black advertisement. The Court also considers the potential damage to Defendants of undermining their authority that a proposed injunction would have.

On the other hand, the First Amendment right of free speech is a fundamental right, the loss of which, as observed above, for even a minimal period of time, constitutes irreparable injury. Whatever adverse effects an injunction will have on Defendants' authority and efforts at teaching students the adverse effects of alcohol and that its consumption by minors is illegal are de minimis or nonexistent and are a direct result of Defendants' own acts rather than issuance of an injunction. Any "secondary meaning" of the phrase on the t-shirts or association in the minds of those viewing the phrase on the t-shirts between the message and alcoholic beverages was created by Defendant James Harrod. The

Court finds that the threatened injury to Plaintiffs—impairment and penalization of the exercise of their First Amendment rights—outweighs whatever damage, if any, the proposed injunction may cause Defendants.

*The Public Interest*

The Court finds that Plaintiffs have made the required showing that the proposed injunction, if issued, would not be adverse to the public interest. The public has an interest in the protection and preservation of First Amendment rights. "Vindication of constitutional freedoms and protection of First Amendment rights is in the *public interest." Albright v. Board of Education of Granite School District,* 765 F.Supp. 682, 686–87 (D.Utah 1991). *See Community Communications v. City of Boulder, Colo.,* 660 F.2d 1370, 1376 & n. 5 (10th Cir.1981) (public's interest in receipt of diversified communications).

CONCLUSION

The motion of Defendants Sharon Stewart, Lyle Head, Larry Molder, Jimmie Smith and K.K. Obrai in their individual capacities to dismiss Plaintiffs' Amended Complaint based upon qualified immunity, treated as a motion for summary judgment, is GRANTED. Defendants' motion to dismiss Plaintiffs' § 1983 claims for deprivation of substantive due process and Plaintiff parents' § 1983 claims for deprivation of procedural due process is GRANTED. In all other respects Defendants' motion to dismiss is DENIED.

Plaintiffs' application for a preliminary injunction against all Defendants with the exception of Defendant James Harrod individually and as Superintendent of the Bethel School Board is DENIED. Plaintiffs' application for a preliminary injunction against Defendant James Harrod individually and as Superintendent of the Bethel School Board is, in accordance with the foregoing and pursuant to F.R.Civ.P. 65, GRANTED.

Defendant James Harrod individually and as Superintendent of the Bethel School

Board and any agents, employees or persons acting in concert with him or at his direction are hereby enjoined from applying any Bethel Public School Dress Code provision prohibiting the wearing of clothing bearing a message which advertises alcoholic beverages to t-shirts bearing the words "[t]he best of the night's adventures are reserved for people with nothing planned" when worn to Bethel Public Schools during regular school hours and are enjoined from prohibiting the wearing of said t-shirts to Bethel Public Schools during regular school hours, and from suspending, expelling or otherwise punishing students for same.

IT IS SO ORDERED.